IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AUTO CHEM LABORATORIES, INC., :
*et al*.
  Plaintiffs, :
          Case No. 3:07cv156
    vs. :
          JUDGE WALTER HERBERT RICE
TURTLE WAX, INC., :

  Defendant. :

---

DECISION AND ENTRY ADOPTING, IN PART, AND REJECTING, IN
PART, MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS
(DOC. #29); OVERRULING, IN PART, AND SUSTAINING, IN PART,
DEFENDANT'S OBJECTIONS THERETO (DOC. #30) AND
DEFENDANT'S MOTION TO DISMISS (DOC. #10); AND OVERRULING
PLAINTIFFS' MOTION FOR *IN CAMERA* REVIEW (DOC. #20)

---

On March 26, 2007, Plaintiffs Auto Chem Laboratories, Inc. ("Auto Chem"),

Procraft Industries, Inc. ("Procraft"), and Bruce K. Culpepper filed their Complaint

in the Court of Common Pleas, in Montgomery County, Ohio.  Based on the

diversity of the parties, under 28 U.S.C. § 1332,[1] the Defendant removed the case

to this Court, on April 26, 2007. Doc. #1.

The parties herein were previously engaged in various business dealings,

involving developing, manufacturing and marketing high-end professional auto

appearance products.  It is the break-down of this business relationship that

---

[1]All three of the Plaintiffs "reside" in Ohio, while the Defendant's principal
place of business is in Illinois. Doc. #2 ¶¶ 1-4.

prompted the Plaintiffs to file the instant Complaint, alleging: (1) promissory estoppel (Count I); (2) fraudulent misrepresentation (Count II); (3) fraudulent concealment (Count III); (4) breach of implied in law contract (Count V); and (5) breach of express contract (Count VI).[2] Doc. #2.

The Defendant moves the Court to dismiss the Plaintiffs' Complaint asserting that all five claims are barred by the applicable statutes of limitations, that the statute of frauds bars the claims for promissory estoppel and breach of express contract and that none of the allegations state claims upon which relief can be granted. Doc. #10. The Magistrate Judge has issued a Report and Recommendations on the Defendant's Motion, recommending that portions of said Motion be sustained and portions be overruled. Doc. #29. Subsequently, the Defendant has objected to the Magistrate Judge's Report and Recommendations and the Plaintiffs have responded. Doc. #30 (Def.'s Obj.); Docs. #28, #31 (Pls.' Resp.). Also pending before the Court is the Plaintiffs' Motion for an *in camera* review of certain documents. Doc. #20.

The Court will now set forth the standard for ruling on motions to dismiss, followed by an analysis of the facts and the issues raised by the parties, in the order as set forth above.

---

[2]The Complaint also contained two additional claims, which the Plaintiffs have subsequently voluntarily dismissed, to wit: negligent misrepresentation (Count IV) and conversion (Count VII). Doc. #2 (Complaint); Doc. #15 (Not. of Vol. Dismissal).

I.    STANDARD FOR RULING ON MOTION TO DISMISS

The Supreme Court recently issued two cases wherein it refined the

standards a court must use when faced with a motion to dismiss, under Rule

12(b)(6).

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain
> statement of the claim showing that the pleader is entitled to relief."
> Specific facts are not necessary; the statement need only "give the
> defendant fair notice of what the . . . claim is and the grounds upon
> which it rests."  In addition, when ruling on a defendant's motion to
> dismiss, a judge must accept as true all of the factual allegations
> contained in the complaint.

Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (quoting Fed. R. Civ. P. 8(a)(2)

and Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007); some citations

omitted).  The Court further explained that "a plaintiff's obligation to provide the

'grounds' of his 'entitlement to relief' requires more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do."

Twombly, 127 S. Ct. at 1964-65 (citation omitted).  On this point, the Sixth

Circuit expounds by pointing out that although a complaint need not contain

"detailed" factual allegations, its "[f]actual allegations must be enough to raise a

right to relief above the speculative level on the assumption that all the allegations

in the complaint are true." Ass'n of Cleveland Fire Fighters v. City of Cleveland,

502 F.3d 545, 548 (6th Cir. 2007) (quoting Twombly, 127 S. Ct. at 1965).

II.    FACTS

Plaintiff Auto Chem develops, manufactures and markets professional auto appearance products. Doc. #2.  ¶ 1.  Plaintiff Procraft distributes professional auto appearance products to automobile dealerships. Id. ¶ 2.  Plaintiff Culpepper was the President of both Auto Chem and ProCraft, at all times relevant to this litigation. Id. ¶ 3.  Defendant Turtle Wax manufactures and markets auto appearance and cleaning products and is engaged in the sale, marketing, and distribution of retail and professional auto care products. Id. ¶¶ 4, 8.

From approximately 1993 to 1995, Turtle Wax solicited Culpepper to develop a line of private label products, under the Super PolyShell ("SPS line") brand name. Id. ¶ 10.  Commencing on or about 1993, Turtle Wax expressed to Culpepper that it wanted to partner with Auto Chem for the development, manufacture, marketing, sale and distribution of the SPS line and, specifically, wanted Auto Chem to exclusively manufacture the SPS line and to be Turtle Wax's exclusive national distribution and fulfillment center for that product line. Id. ¶ 11. As part of this process, Auto Chem disclosed propriety information to Turtle Wax about the content of its products and about its labeling. Id. ¶ 13.

Commencing on or about 1993, Auto Chem accepted Turtle Wax's proposal to enter into a partnership toward developing the SPS line.[3] Id. ¶ 12.  By 1997,

_____

[3]The Defendant correctly points out that the Plaintiffs do not assert that this agreement was reduced to writing, nor do they attach any written evidence of such agreement to the Complaint. Doc. #10 at 2.

Auto Chem was developing a complete line of professional grade auto appearance formulas for Turtle Wax, under the SPS brand name. Id. ¶ 15. In 1998 or 1999, Turtle Wax made a Test Market Revenue Forecast for the SPS line and projected that Turtle Wax would purchase the following amounts from Auto Chem in the first three years of the SPS line: Year 1: $1,797,920; Year 2: $2,333,606; Year 3: $2,917,008. Id. ¶ 17.

In August 1998, Turtle Wax asked Auto Chem to develop a separate line of products, known as the "TD line." Id. ¶ 21. As part of this process, Auto Chem conducted, at its own expense, the research necessary to develop fifteen new formulas, with the development of each formula costing between $25,000 and $75,000. Id. At a time uncertain, Turtle Wax forecast that it would purchase from Auto Chem approximately $2 million worth of the TD line over the next five years; Auto Chem was to be the exclusive manufacturer and developer of this product. Id. ¶ 23.

On or around January 2000, Turtle Wax's vice president requested information from Turtle Wax's principals about the possibility of purchasing Auto Chem, and thereafter communicated the possibility of such a purchase to Culpepper. Id. ¶ 26. Thereafter, Culpepper provided sensitive company and financial information to Turtle Wax and discussed the possible purchase with Turtle Wax on a number of occasions. Id.

Around this same time, Turtle Wax revised downward its forecasts regarding purchases from Auto Chem, now projecting $730,000 of SPS purchases and $470,000 of TD purchases for the next year. Id. ¶ 27. In July 2000, after Turtle Wax had formally appointed Auto Chem as the authorized distributor for its SPS line for the State of Ohio, Culpepper established Procraft as a distributorship to specifically handle and service auto dealerships, for Turtle Wax, in Auto Chem's existing markets. Id. ¶ 28.

In late 2000, Turtle Wax encouraged Culpepper to "push" Turtle Wax products, including products not produced by Auto Chem. Id. ¶ 29. Plaintiffs allege that Turtle Wax planned to discontinue the SPS line and needed Culpepper's contacts and customer base to introduce non-Auto Chem developed products, but failed to disclose this to the Plaintiffs. Id. On January 19, 2001, Turtle Wax informed Auto Chem that it would discontinue the sale of the SPS line. Id. ¶ 30.

From January through May 2001, Turtle Wax reassured Auto Chem of its continuing commitment to the TD line. Id. ¶¶ 31, 34. On or about January 19, 2001, Turtle Wax adjusted its projection of purchases from the TD line, estimating at least $400,000 worth of annual, recurring purchases. Id. ¶ 33. Despite Turtle Wax's projections to the contrary, its total purchases of the TD line were approximately $165,000 for 2001, $167,000 for 2002, $90,000 for 2003 and $13,000 for 2004 (through February of that year). Id. ¶ 35. Turtle Wax's final purchase of the TD line from Auto Chem was in February 2004. Turtle Wax never

6

officially terminated its relationship with Auto Chem as the supplier or exclusive

manufacturer of its TD line, although that line was apparently discontinued by

Turtle Wax some time in 2005, without Auto Chem's input, knowledge or consent.

Id.


III.    STATUTE OF LIMITATIONS AND STATUTE OF FRAUDS

A summary of the claims asserted by the Plaintiffs is necessary, at this

point, in order to put the parties' arguments on the statute of limitations (and other

issues, to be discussed later) in perspective.  The Plaintiffs ground their claims for

relief on one or more of the following three basic theories:[4] (1) that the Defendant

wronged the Plaintiffs in its conduct concerning the parties' relationship as

business partners in the development, sales and marketing of the SPS and TD lines

of auto care products (the "partnership allegations"): (2) that the Defendant acted

wrongfully with respect to its future purchases of these product lines (the "product

purchase allegations"); and (3) that the Defendant acted wrongfully with regard to

---

[4]The claim for breach of implied in law contract does not fit so neatly into
these theories, as do the remainder of the claims.  The Complaint alleges the same
basic factual allegations to support all the claims, however, so the Court will rely
on the characterization of the bases for the claims, as set forth in this section.  The
details of the breach of implied contract claim will be further addressed, *infra*.

7

its proposed purchase of Auto Chem (the "business purchase allegations," asserted only as part of the fraudulent concealment claim).[5] See Doc. #2.

A.    Statute of Limitations

The Defendant contends that all five of the Plaintiffs' claims for relief are barred under the applicable statutes of limitations. The Court will begin this analysis by looking at three relevant Ohio Code sections.

Ohio Revised Code § 2305.07 pertains to, among other causes of action, "action[s] upon a contract not in writing, express or implied," and imposes a six year statute of limitations period. However, that Section specifically omits from its provisions actions based on breaches of contracts for sale, which are, instead, covered by § 1302.98. Section 1302.98 provides that actions for breaches of contracts for sale must be commenced within four years after the causes of action accrue. Ohio Rev. Code Ann. § 1302.98(A). Finally, Ohio Revised Code § 2305.09 covers actions for relief based on fraud and imposes a four year statute of limitations on such claims. Ohio Rev. Code Ann. § 2305.09(C).[6]

_____

[5]The Magistrate Judge analyzed the business purchase allegations in the context of the Plaintiffs' claims for breach of contract (Counts V and VI). Doc. #29 at 18-19, 24-25. The Court respectfully disagrees with this approach, in that the Complaint limits the business purchase allegations to the Plaintiffs' claim for fraudulent concealment (Count III). Doc. #2 ¶ 55. Thus, the Court will consider the business purchase allegations in the context of that fraud claim, alone.

[6]The Court respectfully disagrees with the Magistrate Judge's conclusion that the Plaintiffs adequately pled a breach of a "written" contract, thus making

8

With regard to when these limitations periods commence, as to the claims covered by §§ 2305.07 and 1302.98, the Ohio Supreme Court instructs that "a cause of action accrues and the statute of limitations begins to run at the time the wrongful act was committed." Collins v. Sotka, 81 Ohio St. 3d 506, 507, 692 NE2d 581 (1998) (citation omitted); see also Ohio Rev. Code Ann. § 1302.98(B) (providing that, specific to claims brought under that Section, the limitations period accrues "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach").  On the other hand, with regard to claims alleging fraud, both the text of § 2305.09 and Ohio case law make it clear that the four year limitations period for such claims "does not commence to run . . . until the complainants have discovered, or should have discovered, the claimed matters." Investors REIT One v. Jacobs, 46 Ohio St. 3d 176, 546 NE2d 206, syl. ¶ 2b

---

Ohio Revised Code § 2305.06 (which covers "contracts in writing" and sets forth a fifteen year statute of limitations for claims premised thereon) applicable to the present case. Doc. #29 at 26-29.  While the Court recognizes that "[s]pecific facts are not necessary" to survive a Motion to Dismiss, the Federal Rules do require that the Complaint, at a minimum "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (quotation omitted).  Nowhere in the Plaintiffs' Complaint is there an assertion that any of the contracts at issue were written, thus the Plaintiffs have not given the Defendant "fair notice" that they were bringing claims for breach of written contracts.  Further, the Plaintiffs concede, in their Memorandum in Opposition to the Defendant's Motion for Summary Judgment, that they do not know if a writing evinces the existence of any of the alleged contracts, further indicating that they did not intend to plead such facts. Doc. #11 at 3 n.7 ("Turtle Wax's own less formal records, such as its minutes, meeting minutes, resolutions, memoranda, or signed notes may, under certain circumstances, suffice to satisfy the Statute of Frauds.").

(1989); see also Ohio Rev. Code Ann. § 2305.09.  The Court will now turn to an identification of the proper statute of limitations period for each of the asserted claims and the times at which each such period commenced.

        1.    <u>Identification of Statutory Period for Each Asserted Claim</u>

        a.    <u>Promissory Estoppel</u>

The Plaintiffs' first claim, promissory estoppel, alleges that the Defendant made certain promises and/or representations with respect to both the nature of the business relationship between the parties (the partnership allegations) and the amount of products the Defendant would purchase from the Plaintiffs (the product purchase allegations). Doc. #2 ¶¶ 37-38.  Thus, part of this claim (pertaining to the partnership allegations) will be covered by the six year period contained in the more general provisions of § 2305.07, while part (pertaining to product purchase allegations) will be covered by the more specific four year statute of limitations period found in § 1302.98.[7] <u>GRW Indus. v. GMC</u>, 1999 U.S. App. LEXIS 14005,

---

[7]Both the Magistrate Judge's Report and Recommendations and the Plaintiffs' Memorandum in Opposition take the position that the product purchase allegations should not be separated from the partnership allegations, on the promissory estoppel claim (and the breach of implied contract claim, discussed *infra*) and, thus, only the six-year partnership statute of limitations should apply. Doc. #29 at 12-15; Doc. #31.  The Defendant, on the other hand, takes the position that only the four-year product purchase statute of limitations should apply. Doc. #30.  The case cited by the Plaintiffs, <u>Allied Erecting & Dismantling Co. v. Auto Baling Co.</u>, 69 Ohio App. 3d 502 (Ohio 11th App. Dist. 1990), speaks to the predominant purpose of a contract that is for the provision of both products and services (see *infra* note 9), but does not stretch so far as to forcibly

*12 (6th Cir. June 17, 1999) (applying § 1302.98's four year period for

promissory estoppel claim for sale of goods claim); <u>City of Cleveland Heights v.</u>

<u>City of Cleveland</u>, 2001 Ohio App. LEXIS 5010, *14 n.3 (Ohio 8th App. Dist. Nov.

8, 2001) (applying six year statute of limitations period found in § 2305.07 to

promissory estoppel claim involving transfer of real estate in exchange for certain

promises regarding rent, upkeep, etc.).


        b.    <u>Fraudulent Misrepresentation and Fraudulent</u>
              <u>Concealment</u>

As their second claim for relief, the Plaintiffs assert that the Defendant

fraudulently misrepresented certain aspects of the business relationship between

the parties (the partnership allegations) and, specifically, misrepresented its

intentions about the future purchases of the SPS and TD product lines (the product

purchase allegations). Doc. #2 ¶¶ 43-44.  The third claim for relief alleges that the

Defendant fraudulently concealed from the Plaintiffs that it had made the following

misrepresentations:  the nature of the parties' business relationship as a

partnership (the partnership allegations), the projected purchase amounts of the

---

consolidate two such distinct alleged agreements as a partnership agreement and a
contract for the purchase of products.  Because the fairest reading of the
Complaint indicates that the Plaintiffs have asserted the existence of both
partnership agreements and agreements pertaining to the sale of goods, the Court
will interpret their promissory estoppel claim as applying to both the alleged
partnership (Doc. #2 ¶ 37) and the promised product purchases (id. ¶ 38), in order
to apply the respective statutes of limitations.

SPS and TD line items (the product purchase allegations), and Defendant's intent to purchase the Plaintiffs' business (the business purchase allegations). Id. ¶¶ 53-55. The statute of limitations for all parts of these fraud-based claims is four years. Ohio Rev. Code Ann. § 2305.09(C); see also Keisler v. FirstEnergy Corp., 2006 Ohio App. LEXIS 414, **12-13 (Ohio 6th App. Dist. Feb. 3, 2006) (applying four year statute of limitations to fraudulent misrepresentation claim); Malone v. Malone, 1999 Ohio App. LEXIS 2209, *9 (Ohio 7th App. Dist. May 5, 1999) (same, as to claim for fraudulent concealment).

> c. Breach of Implied in Law Contract and Breach of Express Contract[8]

As its fifth and sixth claims for relief, the Plaintiffs assert that the Defendant breached both an implied in law contract and an express contract, with respect to both the partnership allegations and the product purchase allegations. Doc. #2 ¶¶ 68-77. The parts of these claims that are based on the partnership allegations will be covered by the six year period in § 2305.07. The portion of these claims that pertains to the alleged breach of a contract for the sale of goods is covered by the four year statute of limitations period in Ohio Revised Code § 1302.98.[9] See

---

[8]See comments supra note 7, which are equally applicable to the Plaintiffs' breach of implied in law contract claim.

[9]Ohio courts have held that where a mixed contract of sales and services exists, it is to be classified according to its "predominant factor and purpose," for purposes of determining which statute of limitations applies. R. Renaissance, Inc.

Val Decker Packing Co. v. Corn Products Sales Co., 411 F.2d 850, 853 (6th Cir. 1969) (noting that Ohio has "adopted the four-year statute of limitations for sales contracts" and that, in so doing, "the General Assembly amended the six-year statute of limitations for implied contracts and the fifteen-year statute for express contracts to provide an exception for sales contracts within the provisions of Ohio Rev. Code § 1302.98").

2. Identification of when Limitations Periods Commenced

As previously set forth, the Plaintiffs have alleged grounds for their five causes of action on three basic theories, to wit:  the partnership allegations, the product purchase allegations and the business purchase allegations.  As just described, the statute of limitations for all fraud related claims, regardless of the

───────────────

v. Rohm & Haas Co., 674 F. Supp. 591, 594 (S.D. Ohio 1987).

> To determine whether a contract is one for the sale of a good or for a service, a court applies the predominant purpose test.  The predominant purpose test determines "whether the predominant factor and purpose of the contract is the rendition of service, with goods incidentally involved, or whether the contract is for the sale of goods, with labor incidentally involved."

Wagner-Meinert, Inc. v. EDA Controls Corp., 444 F. Supp. 2d 800, 802 (N.D. Ohio 2006), aff'd, 2007 U.S. App. LEXIS 4879 (6th Cir. Feb. 23, 2007) (quoting and citing Allied Erecting & Dismantling Co. v. Auto Baling Co., 69 Ohio App. 3d 502, 508, 591 N.E.2d 259 (1990)).

This Court concludes that the alleged product purchase contracts, in the present case, were predominantly for the sale of the SPS and TD product lines, with the provision of services (e.g., research, development) being attendant to the expected eventual sale of such products.

13

theory upon which they are based, is four years.  This period commences at the time the fraudulent conduct was, or should have been, discovered.  For all non-fraud claims, the statute of limitations for the claims based on the partnership allegations is six years and the period for the claims based on the product purchase allegations is four years.[10]  These periods commence at the time the allegedly wrongful acts occurred.

a.   Defendant's Position

As to the timing of when the various claims commenced, the Defendant argues generally that the statutory period for the claims based on the partnership allegations started in January 2001, when it cancelled its sales of the SPS product line (and, thus, any alleged partnership based on that line) and had "drastically reduced" its forecast for purchase of the TD product line. Doc. #10 at 9 ("Assuming that the forecast estimates could be binding (and they are not), at the latest, Plaintiffs had constructive notice as of January 19, 2001, that any promised 'partnership' was over.").

As to the claims based on the product purchase allegations, the Defendant asserts that the latest possible starting time for the statute of limitations for any claims pertaining to the SPS line was January, 2001, when it canceled that

---

[10]The business purchase allegations are only made as a basis for the Plaintiffs' fraudulent concealment claim, which is covered by the four year fraud statute of limitations.

14

product line. Id. at 7-8.  As to the TD line of products, the Defendant contends that by the end of 2001, the Plaintiffs knew that its purchases of the TD line were only $165,000, far short of the most recent forecasted amount of $400,000, and, thus, that date was the latest possible start date for that statutory period. Id. at 8.

As to the one claim based, in part, on the business purchase allegations (fraudulent concealment), the Defendant argues that, since no concrete negotiations ever occurred regarding this possible business purchase, the Plaintiffs should have known that it did not intend to purchase the Plaintiffs' business shortly after the alleged vague conversations took place between the parties, in January, 2000.  Thus, it argues that the statutory period for that claim began to run in January, 2000. Id. at 8-9.

b.    Plaintiffs' Position

In response and without further explanation, the Plaintiffs argue that the statute of limitations for all claims did not begin to run until June 15, 2004, when their counsel sent the Defendant a letter threatening to file the present litigation.[11]

---

[11]The Plaintiffs also argue, generally, that where a statute of limitations defense (or any other affirmative defense) does not appear conclusively from the face of a complaint, a court must deny a motion to dismiss. Doc. #11 at 6.  This is simply another way of saying that a court may not consider sources outside of the complaint when ruling on a motion to dismiss, which this Court has stated, *supra*, Section I. See also Olding v. Casey, 680 F. Supp. 1081, 1082 (S.D. Ohio 1987) ("[A] Motion to Dismiss on the basis of an affirmative defense can be granted only where the defense appears valid from the face of the Complaint alone.").

See Doc. #1 ¶ 6.

      c.    Court's Analysis of Commencement of Statutes of
             Limitations

At the outset, the Court points out that the Plaintiffs filed their Complaint on
March 26, 2007. Thus, the facts giving rise to the commencement of any six year
period of limitations must have occurred after March 26, 2001 and after March 26,
2003, for any four year period, in order for the claims to survive the Defendant's
Motion to Dismiss, on this point. The Court will now look to the facts, as alleged
in the Complaint, to determine the starting dates for the relevant statutes of
limitations.

      i.    Non-Fraud Claims (Counts I, V and VI)

As to the Plaintiffs' non-fraud based partnership allegations, the Court notes
that, on January 19, 2001, the Defendant informed the Plaintiffs that it would
discontinue the sale of the SPS product line (thus ending any alleged partnership on
this line). However, it continued to purchase the TD line until February, 2004.
Thus, the statute of limitations period for any claims based on the alleged
partnership pertaining to the SPS product line began on January 19, 2001, while
the commensurate period for any partnership pertaining to the TD line did not
commence until at least February, 2004. As to the SPS line, then, the Defendant's

16

Motion to Dismiss has merit, since suit was not filed until March, 2007, more than six years after the beginning of the limitations period.  Conversely, the Defendant's Motion does not have merit as to the TD product line purchase allegations, since that six-year claim period did not commence until at least February, 2004.

Turning to the non-fraud claims based on the product purchase allegations, the Court likewise notes that the Defendant informed the Plaintiffs that it would discontinue the sale of the SPS product line, on January 19, 2001, yet it continued to purchase the TD line until February, 2004.  Thus, the statute of limitations period for any claims based on alleged improper conduct pertaining to the sale/purchase of the SPS product line began on January 19, 2001, while the commensurate period for the TD line did not commence until at least February, 2004.  As to the SPS line, then, the Defendant's Motion to Dismiss has merit, since suit was not filed until March, 2007, more than four years after the beginning of the limitations period.  Conversely, the Defendant's Motion does not have merit as to the TD product line purchase allegations, since that four-year claim period did not commence until at least February, 2004.


ii.  <u>Fraud Claims (Count II and III)</u>

The Court agrees with the Magistrate Judge that the Complaint sufficiently asserts fraud related misconduct over a lengthy period of time, allegedly culminating sometime in 2005, when the Defendant discontinued its dealings with

17

the Plaintiffs, without informing them that their business relationship was over.

For the reasons more fully set forth in the Magistrate Judge's Report and

Recommendations (Doc. #29 at 38-43), the Court finds that the Defendant's

Motion does not have merit as to the fraud claims, since that four-year claim period

did not commence until approximately 2005.

   In sum, then, with regard to the Defendant's statute of limitations defense,

the Defendant's Motion to Dismiss (Doc. #10) is SUSTAINED, as to the following

claims:

- Those portions of Counts I, V and VI (non-fraud claims) that are grounded on
  the partnership allegations and the product purchase allegations pertaining to
  the SPS product line.

Therefore, the following claims, or portions of claims, have survived the

Defendant's Motion to Dismiss, at this stage of the Court's review:

- Those portions of Counts I, V and VI (non-fraud claims) that are grounded on
  the partnership allegations and the product purchase allegations pertaining to
  the TD product line.

- Counts II and III (fraud claims)

   B.   Statute of Frauds

   Moving forward with those claims that remain, the Court will now turn to an

analysis of the Defendant's Motion to Dismiss the claims for promissory estoppel

and breach of express contract, pursuant to the statute of frauds. Doc. #10 at 10-12.

As to both the alleged partnership agreement between the parties and the alleged agreement for the sale of the TD product line, the Defendant argues that since there is no evidence of signed writings memorializing the alleged agreements, the oral agreements must satisfy the parameters of the Ohio statute of frauds, in order to be valid. Id. at 10-11.  The Defendant further asserts that, according to the Plaintiffs' own allegations, the parties expected Auto Chem to be the exclusive supplier and distributor of the TD line of products for at least five years and, thus, the Plaintiffs' breach of express contract claim is barred by that statute's "not to be performed within one year" provision. Id. at 10-12.  Finally, the Defendant states that the statute of frauds bars the Plaintiffs' promissory estoppel claim for the same reasons that it bars the breach of express contract claim. Id. at 12.

In response, the Plaintiffs argue, generally, that the question of the applicability of the statute of frauds is a question that should be resolved at trial, rather than on a Motion to Dismiss. Doc. #11 at 3, n.6.  The Plaintiffs also argue that oral partnerships, such as the one at issue, are not subject to the statute of frauds because of their perpetual nature. Id. at 9, n.12.  Finally, as to the applicability of the statute of frauds to their promissory estoppel claim, the

Plaintiffs argue that the doctrine of promissory estoppel takes agreements out of

the application of the statute of frauds. Id. at 7.

Section 1335.05 of Ohio's statute of frauds, in part, addresses agreements

that are not to be performed within one year and provides as follows:

> No action shall be brought . . . upon an agreement that is not to be
> performed within one year from the making thereof; unless the
> agreement upon which such action is brought, or some memorandum
> or note thereof, is in writing and signed by the party to be charged
> therewith or some other person thereunto by him or her lawfully
> authorized.

Ohio Rev. Code Ann. § 1335.05.  It is upon this language that the Defendant rests

its argument that the Plaintiffs' promissory estoppel and breach of express contract

claims should be dismissed.

The Ohio Supreme Court has interpreted this portion of § 1335.05 as

follows:

> For over a century, the "not to be performed within one year"
> provision of the Statute of Frauds, in Ohio and elsewhere, has been
> given literal and narrow construction.  The provision applies only to
> agreements which, by their terms, cannot be fully performed within a
> year . . . thus, where the time for performance under an agreement is
> indefinite, or is dependent upon a contingency which may or may not
> happen within a year, the agreement does not fall within the Statute
> of Frauds.

Sherman v. Haines, 73 Ohio St.3d 125, 127, 652 N.E.2d 698  (1995) (citations

omitted).  A contract is within the statute of frauds, and is therefore

unenforceable, if it "is incapable of being performed within a year of the making

thereof," Hummel v. Hummel, 133 Ohio St. 520, 14 N.E.2d 923, syl. ¶ 1 (1938),

20

or if "the parties did not intend the alleged contract[] to be fully performed within one year of the date[] of [its] making," Pro Arts, Inc. v. K Mart Corp., 580 F. Supp. 1073, 1075 (N.D. Ohio 1984). Thus, "contracts 'not to be performed within one year' include only agreements which by a fair and reasonable interpretation of the terms used by the parties and in view of all the circumstances existing at the time do not admit performance, according to the language and intention, within a year from the time of the making of the contract." Lingo v. Ohio Cent. R.R., 2006 Ohio App. LEXIS 2113, *31 (Ohio Ct. App., Franklin County May 9, 2006) (quoting Robnolte v. Kohart, 81 Ohio App. 1, 5, 76 N.E.2d 913 (Ohio 3rd App. Dist. 1947)). Conversely, "[a] promise which is not likely to be performed within a year, and which in fact is not performed within a year, is still not within the statute of frauds if at the time the contract is made, there is a possibility in law and in fact that full performance such as the parties intended may be completed before the expiration of a year." Ford v. Tandy Transp., 86 Ohio App. 3d 364, 382, 620 N.E.2d 996 (Ohio 4th App. Dist. 1993).


        1.     Statute of Frauds as Defense to Breach of Express Contract Claim

Starting with an analysis of the Plaintiffs' contentions as to their breach of express contract claim, the Court finds each of them to be without merit. First, courts have decided statute of frauds cases at the motion to dismiss level and the

Plaintiffs point to nothing to indicate that this Court should not follow suit, assuming the factual allegations (or lack thereof) in the Complaint support such a determination.[12] See Landskroner v. Landskroner, 154 Ohio App. 3d 471, 489, 797 N.E.2d 1002 (Ohio 8th App. Dist. 2003) (deciding promissory estoppel and statute of frauds questions at motion to dismiss level).

Next, the Plaintiffs argue that oral partnerships, such as the one at issue, are not subject to the statute of frauds because of their perpetual nature. In so doing, they cite several Ohio appellate court cases with supposedly similar facts to the present case. However, none of the cited cases is supportive of the Plaintiffs' point. For example, in one of the cited cases, although the statute of frauds was at issue, it was not applied in the context of an agreement for a "perpetual partnership", but rather in the context of payment for past-due employment compensation. Mellino v. Charles Kampinski Co., L.P.A., 163 Ohio App. 3d 163, 169, 837 N.E.2d 385 (Ohio 8th App. Dist. 2005) (concluding that agreement to pay departing law partner fees for past-due work, which would be paid from future remissions of client bills, was capable of being fully performed within one year). In two other cited cases, the statute of frauds was not an issue. Brewster v. Bigham,

_____

[12]Once again, the Court notes its disagreement with the Magistrate Judge's Report and Recommendation, in its acceptance of the Plaintiffs' argument, on brief, that they might later be able to produce multiple written documents that "might" satisfy the statute of frauds. Doc. #29 at 30-31. Given that the Plaintiffs did not plead the existence of a written contract, see supra note 6, the Court will not read such a factual allegation, which would have raised the Plaintiffs' right to relief above the speculative level, into the Complaint.

2005 Ohio App. LEXIS 5488 (Ohio 11th App. Dist. Nov. 10, 2005); Hynes v.

Needleman, 204 B.R. 524, 526 (Bankr. S.D. Ohio 1997).  In the final two cited

cases, the Court determined that, given the specific facts of the types of

partnership arrangements at issue (rather than the general fact that each of the

cases involved a "perpetual partnership"), it was possible that the partnerships

could have been completely performed within one year. Samman v. Nukta, 2003

Ohio App. LEXIS 154 (Ohio 8th App. Dist. Jan. 16, 2003) (where plaintiff

indicated that parties had entered into oral partnership agreement "for an indefinite

term," court determined that agreement could have been performed in less than a

year if, for example, business venture between parties was dissolved because it

proved unprofitable);[13] Cloud v. Baldwin, 1997 Ohio App. LEXIS 499, *9 (Ohio 8th

App. Dist. Feb. 13, 1997) (finding that agreement that appellant would provide the

money, supplies and services to establish a licensed funeral parlor in exchange for

one half of the business's profits could have been fully performed on the part of

appellant within a year).

     The Plaintiffs also point to a provision in Ohio Jurisprudence in support of

their contention that perpetual partnerships, such as the one allegedly at issue in

---

     [13]Although the Samman case may be supportive of the Plaintiffs' contention
that perpetual partnerships are not subject to the statute of frauds, because of
their indefinite nature, the facts of the present case do not indicate that such a
partnership existed here, as will be more fully discussed herein.

this case, fall outside the parameters of the statute of frauds.  That treatise

provides that

> [The statute of frauds is not applicable] to a contract of partnership
> which fixes no definite time for the duration or continuance of the
> partnership, and which is therefore susceptible of performance within
> a year by a dissolution of the partnership, if such should occur; the
> same rule applies if the duration of the partnership is contingent on
> the happening of an event which may or may not happen within the
> year.

51 Ohio Jur. 3d (Frauds, Statute of) § 68.  While the Court agrees that this

language comports with Ohio statutory and case law on the applicability of the

statute of frauds in such cases, that conclusion is not determinative of the issue at

hand.  The facts as alleged in the Complaint do not indicate that the parties either

"fixe[d] no definite time for the duration or continuance of the partnership" (what

the Plaintiffs seem to be calling a "perpetual partnership") or that "the duration of

the partnership is contingent on the happening of an event which may or may not

happen within the year."  Those facts, instead, indicate that the parties did agree

that the partnership would continue for a time to exceed one year from the

commencement of the alleged partnership, in that the underlying presumption was

that the partnership would last for multiple years and at least until Turtle Wax

completed its projected purchases of the TD product line.  See e.g., Doc. #2 ¶ 33

("Healy told Culpepper that Turtle Wax was going to continue to purchase the TD

line . . . .  Turtle Wax principals told Auto Chem that Auto Chem could expect

annual, recurring purchases totaling at least $400,000 per annum.").  The fact that

24

the Plaintiffs have filed suit, based in large part on the fact that the Defendant did not continue purchasing products (and, thus, continue their partnership with the Plaintiffs) for several years, as indicated in the purchase forecasts, is a telling indication that the parties (or at least the Plaintiffs) intended that the partnership would not be fully performed within one year of its making.

Because the parties did not intend that the alleged contract would be fully performed within one year of the date of its making, the breach of express contract claim that is based on the alleged partnership for the production of the TD product line and the attendant alleged contract for the sale of the TD product line is barred by the statute of frauds. Thus, the Defendant's Motion to Dismiss (Doc. #10) is SUSTAINED, as to the Plaintiffs' breach of express contract claim (Count VI).

> ### 2.    Statute of Frauds as Defense to Promissory Estoppel Claim[14]

The Ohio Supreme Court has not had the opportunity to address the question of whether a promissory estoppel argument is barred by the "not likely to be performed within a year" provision of the statute of frauds. Several Ohio appellate courts have been faced with this question, however, and have been willing to entertain promissory estoppel claims, even after concluding that a party's

---

[14]The Court respectfully disagrees with the Magistrate Judge's conclusion that this issue should not be resolved at the Motion to Dismiss level, since the parties did not fully brief it (Doc. #29 at 15-17), based on the Court's conclusion that Ohio law is clear on the issue before it, as will be more fully set forth in in this subsection.

express contract claim was barred by the statute of frauds, but "only in narrow circumstances." Beaverpark Assocs. v. Larry Stein Realty Co., 1995 Ohio App. LEXIS 3778, *13 (Ohio 2nd App. Dist. Aug. 30, 1995). Those "narrow circumstances" generally include two factual scenarios, to wit: (1) where there was a misrepresentation that the statute of fraud's requirements were complied with (or, similarly, where there was a promise to prepare signed documentation of the agreement), or (2) in employment-at-will cases. E.g., Olympic Holding Co., LLC v. ACE Limited, 2007 Ohio App. LEXIS 5822, *24 (Ohio 10th App. Dist. Dec. 13, 2007) (considering promissory estoppel argument in case where facts indicated one party misrepresented intent to supply signed written memoranda of parties' agreement); Gathagan v. Firestone Tire & Rubber Co., 23 Ohio App. 3d 16, 17-18, 490 N.E.2d 923 (Ohio 9th App. Dist. 1985) (considering promissory estoppel argument in employment-at-will case).

As to the reasoning behind allowing the doctrine of promissory estoppel to preclude a statute of frauds defense when there has been either a misrepresentation that the statute's requirements have been complied with or a promise to make a memorandum of the agreement, the Court of Appeals from Cuyahoga County noted that the Ohio Supreme Court has adopted the doctrine of promissory estoppel, in general, as it is stated in Section 90 of the Restatement Second of Contracts. McCarthy, Lebit, Crystal & Haiman Co., L.P.A. v. First Union Management, 87 Ohio App. 3d 613, 624, 622 N.E.2d 1093 (Ohio 8th App. Dist.

26

1993).  This Restatement Section provides that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Id. (quoting Restatement 2d of Contracts, § 90; citing McCroskey v. Ohio, 8 Ohio St. 3d 29, 456 N.E.2d 1204 (1983) and Talley v. Teamsters Local No. 377, 48 Ohio St.2d 142, 357 N.E.2d 44 (1976)).  The Appellate Court goes on to conclude that allowing a promissory estoppel claim to survive a statute of frauds defense when there has been either a misrepresentation that the statute's requirements have been complied with or a promise to make a memorandum of the agreement "adheres to the equitable doctrine of promissory estoppel as adopted by the Ohio Supreme Court and stated in Restatement 2d of Contracts, Section 90." Id. at 627.

> Additionally, it promotes a balanced approach to encouraging those in business to reduce their agreements to writing and thereby adhering to the policy considerations behind the statute of frauds while at the same time providing a mitigating effect to the harsh application of the statute of frauds and assures fairness in business relationships by protecting one who relies to his detriment on the promise of another.

Id.  Other Ohio courts have adopted the same approach. E.g., Olympic Holding Co., LLC v. ACE Limited, 2007 Ohio App. LEXIS 5822 (Ohio 10th App. Dist. Dec. 13, 2007) (finding sufficient evidence of misrepresentation to supply signed written memorandum of agreement, in case involving one party's refusal to go forward

with proposed complex business transaction); Ass'n for Responsible Dev. v.

Fieldstone Ltd. P'ship, 1998 Ohio App. LEXIS 5388 (Ohio 2nd App. Dist. Nov. 13,

1998) (finding no evidence of promise to make memorandum of alleged agreement,

in case involving proposed development of low income subsidized housing).

    With regard to the reasoning behind allowing the doctrine of promissory

estoppel to bar a statute of frauds defense in employment-at-will cases, the Meigs

County Appellate Court quoted Appellate Courts from both Cuyahoga and Lucas

Counties for the proposition that

> Most employment agreements are not reduced to writing and a typical
> hopeful prospective employee does not have the leverage to demand
> that a writing be executed. . . . If an employer is allowed to make
> unqualified and high-sounding promises of fair treatment and job
> security in order to obtain loyal and long-standing employees, and
> then disaffirm such promises and rely on the "at-will" doctrine . . .,
> injustice will frequently result.

Farmer v. Meigs Ctr., 1998 Ohio App. LEXIS 1452, **42-43 (4th App. Dist. Mar.

30, 1998) (quoting Poskocil v. Cleveland Inst. of Music, 1997 Ohio App. LEXIS

1644 (Ohio 8th App. Dist. Apr. 24, 1997) and Jones v. East Center for

Community Mental Health, Inc., 19 Ohio App. 3d 19 (Ohio 6th App. Dist. 1984)).

Other courts have taken the same approach. E.g., Connolly v. Malkamaki, 2002

Ohio App. LEXIS 6664 (Ohio 11th App. Dist. Dec. 13, 2002); Pulver v. Rookwood

Highland Tower Invs., 1997 Ohio App. LEXIS 1153 (Ohio 1st App. Dist. Mar. 26,

1997).

    To counter the Defendant's argument that the statute of frauds bars the

28

Plaintiffs' promissory estoppel claim for the same reasons that it bars the breach of contract claim, the Plaintiffs broadly state that the doctrine of promissory estoppel takes agreements out of the application of the statute of frauds. In support of this statement, they cite Worrell v. Multipress, Inc., 45 Ohio St. 3d 241, 243, 543 N.E.2d 1277 (1989).[15] Worrell is not supportive of the Plaintiffs' overly broad assertion, however. Before reaching the Supreme Court, the appellate court in Worrell held that the trial court properly instructed the jury that the doctrine of promissory estoppel may overcome the requirements of the statute of frauds. Id. at 241. In contrast to the lower court's findings, the Supreme Court found that no sale was ever contemplated as part of the agreement between the parties and, therefore, the statute of frauds was not at issue. Id. at 245. Because the statute of frauds was not at issue, the Court, thus, determined that it "need not reach the question of whether promissory estoppel removes this transaction from the statute of frauds' writing requirement." Id.

As previously explained, Ohio law, as exemplified by appellate decisions, with which reasoning this Court deems persuasive, allows the doctrine of promissory estoppel to bar the statute of frauds as a defense only in the limited circumstances of a misrepresentation that the statute of fraud's requirements were complied with or in employment-at-will cases. Since neither of those factual

---

[15]Plaintiffs also cite Lambert v. Kazinetz, 250 F. Supp. 2d 908 (S.D. Ohio 2003), but the Lambert case did not address the statute of frauds.

scenarios is present in the present case, the Plaintiffs' promissory estoppel claim

fails for the same reasons as their breach of express contract claim. Thus, the

Defendant's Motion to Dismiss (Doc. #10) is SUSTAINED, as to the Plaintiffs'

promissory estoppel claim (Count I).

IV.    FRAUDULENT MISREPRESENTATION, FRAUDULENT CONCEALMENT AND
       BREACH OF IMPLIED IN LAW CONTRACT

       The claims remaining at this juncture include the claims for fraudulent

misrepresentation (Count II) and fraudulent concealment (Count III), as well as that

part of the breach of implied in law contract claim (Count V) that is grounded on

the partnership allegations and on the product purchase allegations for the TD

product line. The Defendant argues, in its Motion to Dismiss, that the Plaintiffs do

not state claims upon which relief can be granted for any of these remaining

claims. The Court will address the merits of the fraud claims first, followed by an

analysis of the breach of implied in law contract claim.

       1.    <u>Fraudulent Misrepresentation and Fraudulent Concealment</u>

       The Defendant alleges that the Plaintiffs have failed to state a claim for relief

for both of their remaining fraud claims, because the representations and promises

upon which the Plaintiffs allegedly relied concerned future possibilities, which are

impermissible events upon which to rely. Doc. #10 at 13-14. As to the Plaintiffs'

fraudulent concealment claim, the Defendant also argues that it fails to satisfy Rule

9(b)'s requirement to plead with particularity, as to the Defendant's alleged

underlying duty to speak. Id. at 14-15.

Ohio courts have determined that an action in common-law civil fraud (which

includes claims for both fraudulent misrepresentation and fraudulent concealment)

has six essential elements:

> (1)  a representation or, where there is a duty to disclose, concealment of a fact,
>
> (2)  which is material to the transaction at hand,
>
> (3)  made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
>
> (4)  with the intent of misleading another into relying upon it,
>
> (5)  justifiable reliance upon the representation or concealment, and
>
> (6)  a resulting injury proximately caused by the reliance.

Burr v. Stark County Bd. of Comm'rs, 23 Ohio St. 3d 69, 491 N.E.2d 1101, syl.

¶ 2 (1986); see also Reardon v. Hale, 2007 Ohio App. LEXIS 3906, *8 (Ohio 12th

App. Dist. Aug. 27, 2007) (same basic elements, specific to fraudulent

concealment); Bradford v. B & P Wrecking Co., 171 Ohio App. 3d 616, 631-32

(Ohio 6th App. Dist. 2007) (same basic elements, specific to fraudulent

misrepresentation).

With regard to the first element of this test, which is the element the

Defendant contends Plaintiffs' Complaint does not satisfy, Ohio courts have found

32

that,

> As a general rule, fraud cannot be predicated upon statements which
> are promissory in their nature when made, and which relate to future
> actions or conduct, since a representation that something will be done
> in the future, or a promise to do it, from its nature, cannot be true or
> false at the time when it is made, and thus cannot generally be fairly
> viewed as a representation of fact.

Raftery v. S. Lee Corp., 2007 U.S. Dist. LEXIS 86860, **7-8 (S.D. Ohio Nov. 15,

2007) (citing Langford v. Sloan, 162 Ohio App.3d 263, 268, 833 N.E.2d 331 (2nd

Ohio App. Dist. 2005)).[16]  The focus on this element of fraud claims is generally on

whether the plaintiff has pled a misrepresentation of "past or existing facts, not

promises or representations relating to future actions or conduct." Telxon Corp. v.

Smart Media of Del., Inc., 2005 Ohio App. LEXIS 4475, *40 (Ohio 9th App. Dist.

Sept. 21, 2005)[17] (citing Williams v. Edwards, 129 Ohio App.3d 116, 124 n.10,

---

[16]See also Micrel, Inc. v. TRW, Inc., 2005 U.S. Dist. LEXIS 9430 (N.D. Ohio
May 17, 2005) (finding that estimated sales volumes, when there was no
guarantee that the customers would continue purchasing at the same levels, were
not representations of "fact" that could be reasonably relied upon in claim of
fraudulent inducement); Telxon Corp. v. Smart Media of Del., Inc., 2005 Ohio App.
LEXIS 4475 (Ohio 9th App. Dist. Sept. 21, 2005) (determining that an alleged
failure to fulfill one business's promise to invest money in another business, in
exchange for an ownership interest therein and to assist in the development of a
product prototype, was an impermissible promise of future conduct).

[17]The Appellate Court, in Telxon Corporation v. Smart Media of Delaware,
Inc., 2005 Ohio App. LEXIS 4475 (Ohio 9th App. Dist. Sept. 21, 2005),
contrasted claims for breaches of contract and torts, such as the fraud claims in
this case.  In so doing, it pointed out that "[a] contract is a promise -- and a
promise necessarily implicates future conduct." Id. at *40 (quotation omitted).
Further, because in Ohio a breach of contract does not create a claim in tort, "[a]
tort claim based upon the same actions [as] those upon which a claim of contract
breach is based will exist independently of the contract action only if the breaching

33

717 N.E.2d 368 (1st App. Dist. 1998)).  However, a plaintiff may prevail upon a

claim for promissory fraud "if he proves that the defendant made a promise

without the present intention of performing it." <u>Raftery</u>, 2007 U.S. Dist. LEXIS

86860 at *8.


      A.    <u>Representation or, Where there is Duty to Disclose,</u>
           <u>Concealment of Fact</u>

     As to this first element of a fraud claim, the present Complaint alleges that

the Defendant misrepresented (or concealed, in the case of the fraudulent

concealment claim) the following facts:  (1) the nature of Turtle Wax and the

Plaintiffs' partnership in the development, sales and marketing of the TD line; and

(2) that Turtle Wax would purchase certain amounts of the TD product line.[18]  A

review of the entire Complaint indicates that the Plaintiffs make a multitude of

---

party also breaches a duty owed separately from that created by the contract, that
is, a duty owed even if no contract existed." <u>Id.</u> at *42 (quoting <u>Textron Fin. Corp.</u>
<u>v. Nationwide Mut. Ins. Co.</u>, 115 Ohio App. 3d 137, 151, 684 N.E.2d 1261 (Ohio
9th App. Dist. 1996)).  To hold otherwise, the Court opined, "would be to convert
every unfulfilled contractual promise, i.e., every alleged breach of a contract, into a
tort claim." <u>Id.</u>

    [18]In the fraudulent misrepresentation claim, the Plaintiffs also include an
allegation that the Defendant misrepresented that if the Plaintiffs undertook the
research and development of the TD line, that Turtle Wax would make the Plaintiffs
the primary supplier of those products. Doc. #2 ¶ 43.  The Plaintiffs concede,
earlier in the Complaint, however, that they were the primary supplier of the TD
product line. <u>Id.</u> ¶ 23 ("Consistent with the parties' prior relationship regarding the
SPS [line of products], Auto Chem continued to be the exclusive manufacturer and
developer of [the TD product line].").  Thus, the Court will not consider this part of
the misrepresentation allegation in the Complaint.

allegations pertaining to their own conduct throughout the parties' business dealings (*e.g.*, developing brand names, researching business opportunities for the products, paying specific costs for developing various line items), but only make three basic allegations with regard to the "representations" made by the Defendant, to wit:  (1) representing that it wanted to partner with the Plaintiffs for the development, manufacture, marketing, sales and distributions of the TD product line (Doc. #2 ¶¶ 11, 37, 43, 44, 53); (2) making various forecasts for the purchases of the product line (id. ¶¶ 17, 23, 27, 33, 38, 44, 54); and (3) "confirm[ing] its commitment to the TD product line" (id. ¶¶ 31, 34).

As previously noted, fraud cannot be predicated upon statements that are promissory in nature and that relate to future actions or conduct, since a representation that something will be done in the future, from its very nature, cannot be true or false at the time it is made and is, thus, not a representation of "fact".  The exception to this rule occurs when a plaintiff proves that a defendant made a promise without the present intention of performing it.

The Court finds that many of the Plaintiffs' allegations are of misrepresentations (or concealments) of promises for future actions or conduct (*e.g.*, that Turtle Wax would make the Plaintiffs its primary supplier of certain products or would make certain future purchases of products), rather than about past or existing facts. Doc. #2 ¶¶ 42-59.  However, the Court finds that the Plaintiffs properly pled allegations that the Defendant made these promises without

the present intention of performing them (*e.g.*, allegations that Defendant made such promises only to get propriety industry information from the Plaintiffs and to keep Plaintiffs from seeking other business opportunities). Id. Thus, the Court finds the Defendant's argument, on this point, to be without merit.

        B.    Rule 9(b)'s Requirement to Allege Facts Giving Rise to Underlying Duty to Speak

As to the fraudulent concealment claim, the Defendant contends that the Plaintiffs' Complaint fails to allege facts giving rise to an underlying duty to speak and, thus, violates Federal Rule of Civil Procedure 9(b)'s requirement to plead such facts with particularity. Specifically, that Rule provides that when alleging fraud, "a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. Proc. 9(b).

The Ohio Supreme Court has determined that an action for fraud "may be grounded upon failure to fully disclose facts of a material nature where there exists a duty to speak." Layman v. Binns, 35 Ohio St. 3d 176, 178, 519 N.E.2d 642 (1988). Although in business transactions, where parties deal at arm's length, each party is ordinarily "presumed to have the opportunity to ascertain relevant facts available to others similarly situated and, therefore, neither party has a duty to disclose material information to the other," Blon v. Bank One, Akron, N.A., 35 Ohio St. 3d 98, 101, 519 N.E.2d 363 (1988), full disclosure may be required

"where such disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts." Id. (quoting Connelly v. Balkwill, 174 F. Supp. 49, 58 (N.D. Ohio 1959)); see also Miles v. McSwegin, 58 Ohio St. 2d 97, 101, 388 N.E.2d 1367 (1979) (concluding that a party may not represent certain facts about a transaction, while withholding material, subsequently acquired, related facts); Restatement (Second) of Torts § 551(2)(b) (noting that "[o]ne party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, . . . matters known to him that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading).

Because the Court agrees with the Magistrate Judge's conclusion (as more fully set forth at Doc. #29 at 36-38) that the present Complaint indeed sets forth allegations that the Defendant did not disclose facts that were "necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts," with sufficient particularity, the Court finds the Defendant's argument, on this point, to be lacking.

Because the Complaint contains factual allegations sufficient to raise the Plaintiffs' right to relief above the speculative level, the Defendant's Motion to Dismiss (Doc. #10) is OVERRULED, as to the Plaintiffs' fraudulent misrepresentation (Count II) and fraudulent concealment (Count III) claims.

37

2. Breach of Implied in Law Contract

The Court will now turn its attention to that portion of the Plaintiffs' breach of implied in law contract claim (Count V) that is grounded on the partnership allegations and the product purchase allegations for the TD product line. In its Motion to Dismiss, the Defendant argues that this claim should be dismissed, because the Complaint alleges an express contract claim that covers the same subject matter, and a party may not bring a claim based on an implied in law contract (for unjust enrichment), if it brings a commensurate express contract claim. Doc. #10 at 17-18; see also Doc. #13 at 17-18 (Def.'s Reply Mem.). Although the reasons are not as straight-forward as the Defendant would have them seem, the Court agrees that this claim should be dismissed, because the Complaint fails to state a claim for breach of an implied in law contract.[19]

The law recognizes three classes of contracts - - - express, implied in fact and implied in law. Hummel v. Hummel, 133 Ohio St. 520, 525, 14 N.E.2d 923 (1938) (citation omitted). The Ohio Supreme Court offers the following explanation for the validity of contracts that are implied in law:

> In contracts implied in law there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in

_____

[19]While the Court agrees with the Magistrate Judge's conclusion that a plaintiff may plead alternative claims for relief (Doc. #29 at 31-32), the Court finds that this does not end the discussion, as to the alternative pleading on the claim before it, as further explained in this subsection.

receipt of  benefits which he is not justly entitled to retain and for
which he may be made to respond to another in an action in the
nature of assumpsit.  Contracts implied in law are not true contracts;
the relation springing therefrom is not in a strict sense contractual but
quasi-contractual or constructively contractual.

Id. (citation omitted).  Implied in law contracts are sometimes referred to as quasi

contracts or constructive contracts.  Id.  A claim for unjust enrichment is one for

breach of an implied in law contract, which occurs when one party "has and

retains money or benefits, which in justice and equity belong to another." Id. at

528.

The preliminary question the Court must address is whether a party may

properly bring a claim for breach of an implied in law contract, while it also asserts

a claim for breach of an express contract for the same matter.  Although Ohio law

on this point is not crystal clear, a review of the cases on point indicates that while

a plaintiff may assert both claims in his complaint, he may not "recover[] under a

theory of unjust enrichment . . . where there exists between the parties an actual

contract."[20] Jan Bliwas v. Cent. States, 1998 U.S. Dist. LEXIS 23316, **12-13

(S.D. Ohio Feb. 13, 1998) (citing Earhart Petroleum, Inc. v. Yowell Transportation,

_____

[20]See Miami Valley Paper, LLC, v. Lebbing Eng'g & Consulting GmbH, 2006
U.S. Dist. LEXIS 76748 (S.D. Ohio Oct. 10, 2006), wherein Judge Spiegel
discusses the conflicting views the courts have taken on pleading alternative
causes of action for express and implied in law contracts that cover the same
issues.  As Judge Spiegel ultimately concluded, and as this Court agrees, "a
plaintiff may set forth both causes of action as alternative theories, pursuant to
Fed. R. Civ. P. 8(e)(2)." Id. at *7 (citation omitted).  However, a plaintiff may not
ultimately succeed under the theory of unjust enrichment when an express contract
covers the same subject. Id.

39

1995 Ohio App. LEXIS 2042 (Ohio 2nd App. Dist. May 17, 1995)).  However, if the alleged express contract is unenforceable, for example as a result of the operation of the statute of frauds, then a plaintiff may proceed on a claim for breach of an implied in law contract. <u>See</u> <u>e.g.</u>, <u>Hughes v. Oberholtzer</u>, 162 Ohio St. 330, 123 N.E.2d 393 (1954) (considering claim of unjust enrichment, after finding the express contract unenforceable under the statute of frauds); <u>Davis & Tatera, Inc. v. Gray-Syracuse, Inc.</u>, 796 F. Supp. 1078, 1086 (S.D. Ohio 1992) (finding that express agreement existed between the parties and, thus, the plaintiffs could not prevail on a claim of unjust enrichment).  Thus, a party may plead alternative causes of action for the same matter, but may only prevail under one or the other.

This approach was taken by the Ohio Supreme Court when deciding Ohio's seminal unjust enrichment case, <u>Hummel v. Hummel</u>, 133 Ohio St. 520, 14 N.E.2d 923 (1938).  The <u>Hummel</u> Court first considered the plaintiff's breach of express contract claim. <u>Id.</u> at 525.  Upon finding the oral express contract unenforceable under the statute of frauds, the Court then moved to an analysis of whether the defendant should be held liable under the theory of unjust enrichment.

> An oral contract which is incapable of being performed within a year of the making thereof is unenforceable by reason of the Statute of Frauds, Section 8621, General Code; but where one party thereto fully performs on his part and the other contracting party, to his unjust enrichment, receives and refuses to pay over money which, under the unenforceable contract, he agreed to pay to the party who has fully performed, a quasi contract arises, upon which the performing party may maintain an action against the defaulting party for money had and received.

Id. at 520, syl. ¶ 1.  In Hummel, the Court ultimately concluded that the defendants should be held liable for breach of implied in law contract, in that they had been unjustly enriched at the expense of the plaintiff. Id. at 529.

In this case, the Court has determined that the alleged express contract is unenforceable as a result of the operation of the statute of frauds.  Thus, it is now proper for the Court to consider whether the Plaintiffs have properly pled an unjust enrichment claim.  In so doing, the Court finds a study of another Ohio Supreme Court's decision to be instructive.

In Hughes v. Oberholtzer, 162 Ohio St. 330, 123 N.E.2d 393 (1954), the Supreme Court initially determined that a contract for a sale of realty failed under the statute of frauds. Id. at 333-34.  Recognizing that "there can not be an express agreement and an implied contract for the same thing existing at the same time," the Court then proceeded to determine whether the Complaint adequately alleged unjust enrichment, as opposed to re-pleading the express contract claim, in the guise of an implied in law contract claim. Id. at 335.

In so doing, the Court pointed out that, essential to the law of quasi contracts is the premise that "one who has furnished materials or labor may recover the reasonable value of the materials or services" and that the "promise to pay such reasonable value is implied" in the law of quasi contracts. Id.  The Court then recognized a distinction between a claim for a breach of express contract and one for a breach of an implied in law contract, in that "[t]he purpose of the

41

quasi-contract action is not to compensate the plaintiff for any loss or damage suffered by him[,] but to compensate him for the benefit he has conferred on the defendant," with the ensuing obligation on behalf of the recipient, "to pay the reasonable worth of the benefit received." Id.

The Court then went on to consider whether the complaint adequately alleged unjust enrichment, focusing on whether it contained an allegation that the consideration moving to the plaintiff was inadequate to fairly compensate him for the benefit he had allegedly conferred on the defendant. Id. at 336. The Court ultimately concluded that the complaint did not seek to recover the value of what was furnished to the defendant (as it would, if it were an unjust enrichment claim), but rather, relied on the alleged express contract while attempting to enforce the same by way of damages.[21] Id. at 337 ("In the instant case the plaintiff does not seek to recover the value of something furnished the defendant. A specific

---

[21]The complaint at issue in Hughes alleged that the plaintiff had agreed to sell the defendant certain real property (for use as a golf course and for the construction of new homes) in exchange for a sum of money and certain promises with respect to the plaintiff's continued use of the land (e.g., to build the plaintiff a new home on the land at actual construction costs). Hughes, 162 Ohio St. at 331-32. The complaint further alleged that the plaintiff had transferred the real estate and the defendant had transferred the monetary sum, but had refused to comply with other promises contained in the original oral agreement. Id. at 332-33. The plaintiff had affixed values to each of the alleged broken promises (e.g., "refus[al] to construct a home for the plaintiff at actual construction costs to the plaintiff's damage in the sum of three thousand dollars ($ 3,000)"), totaling $5,975. Id. at 332 (emphasis added). In its prayer for relief, the complaint provided as follows: "Wherefore, plaintiff prays judgment against defendant in the sum of five thousand nine hundred and seventy-five dollars and no/100 ($ 5,975.00) and for the costs of this action." Id. at 333.

42

contract, oral in character, is relied upon and enforcement thereof is attempted by way of <u>damages</u>." (emphasis in original)).  The Court, thus, concluded that the complaint did not plead the essential elements of an unjust enrichment claim and affirmed the dismissal of the complaint. <u>Id.</u> at 337, 344 (after also discounting plaintiff's doctrine of partial performance argument).

Other Ohio courts have subsequently followed suit in focusing on the <u>value</u> of what was provided to the defendant, as opposed to on the <u>damages</u> incurred by the plaintiff, in unjust enrichment cases. <u>E.g.</u>, <u>Wilkin v. Fyffe</u>, 1996 Ohio App. LEXIS 3905, *13 (Ohio 2nd App. Dist. Sept. 13, 1996) (finding that the appellee was "entitled to recover the reasonable value of the labor and materials provided," in unjust enrichment suit).  Stated another way, courts look to see whether the complaint alleges more than that a benefit was conferred. <u>Jan Bliwas v. Cent. States</u>, 1998 U.S. Dist. LEXIS 23316, *13 (S.D. Ohio Feb. 13, 1998).  Instead, it must allege unjust enrichment by seeking to recover the value of something furnished to the defendant, rather than relying on express promises.[22] <u>Landskroner v. Landskroner</u>, 154 Ohio App. 3d 471, 490, 797 N.E.2d 1002 (Ohio 8th App. Dist. 2003).

---

[22]This concept also underlies the <u>Hummel</u> decision, wherein the Court stated that "a third species of implied assumpsits is when one has had and received money belonging to another, without any valuable consideration given on the receiver's part." <u>Hummel</u>, 133 Ohio St. at 527.

The Complaint, in the present litigation, makes the following allegations, *in toto*, with regard to the breach of implied in law contract claim:

> Plaintiffs conferred benefits upon Turtle Wax, including but not limited to:  expenditures of monies in the research and development of the SPS and TD product lines; authorship and design of packaging and marketing materials for the SPS and TD lines; existing copyrights of Auto Chem products, product information sheets, hands-on marketing and sales training for Turtle Wax personnel; and disclosure of personal industry contacts and customers.  Retention of these benefits by Turtle Wax without payments to Plaintiffs would be unjust.

Doc. #2 ¶¶ 69-70.  In their prayer for relief (with respect to all claims asserted in the Complaint), the Plaintiffs request this Court to: "(1) enter judgment [in] favor of Plaintiffs and against Turtle Wax for compensatory damages in an amount in excess of $25,000 . . ., (2) enter judgment against Turtle Wax for punitive damages and attorney fees, and (3) award any additional relief deemed just and appropriate." Id. at 16.

A review of this language, as well as the other allegations contained in the Complaint, leads the Court to conclude that the Plaintiffs have not set forth a claim for unjust enrichment.  The Complaint merely asserts that the Plaintiffs conferred benefits upon the Defendant.  Nowhere in the Complaint is there an indication of the value of these benefits allegedly conferred or, more generally, that any transfer in consideration (e.g., by way of previous purchases of products) from the Defendant to the Plaintiffs was somehow deficient, as compared to the value of the benefits allegedly conferred upon the Defendant.  Nor do the Plaintiffs pray to be compensated for the value of what they furnished the Defendant; rather, they

44

seek <u>damages</u>. As in <u>Hughes</u>, the present Complaint relies upon the express promises of its breach of contract claim in the context of its unjust enrichment claim, rather than alleging that the Defendant was unjustly enriched at the expense of the Plaintiffs.

Because the Complaint does not contain factual allegations sufficient to raise the Plaintiffs' right to relief above the speculative level, the Defendant's Motion to Dismiss (Doc. #10) is SUSTAINED, as to the Plaintiffs' breach of implied contract claim (Count V).


V.      MOTION FOR *IN CAMERA* REVIEW

As the law requires it to do, the Court has relied solely on the facts alleged in the Plaintiffs' Complaint, in resolving the issues presented in the Defendant's Motion to Dismiss, thus making it unnecessary for the Court to conduct an *in camera* inspection of certain documents in order to make its rulings hereunder. Therefore, the Court OVERRULES the Plaintiffs' Motion for *In Camera* Review of Certain Documents (Doc. #20).


VI.     CONCLUSION

The Magistrate Judge's Report and Recommendations (Doc. #29) are ADOPTED, in part, and REJECTED, in part. Defendant's objections thereto (Doc. #30) are SUSTAINED, in part, and OVERRULED, in part. Defendant's Motion to

45

Dismiss (Doc. #10) is SUSTAINED, as to Counts I, V and VI, and is OVERRULED, as to Counts II and III.  Plaintiffs' Motion for *In Camera* Review of Certain Documents (Doc. #20) is OVERRULED.


September 23, 2008


                                    /s/ Walter Herbert Rice
                                    _____
                                    WALTER HERBERT RICE, JUDGE
                                    UNITED STATES DISTRICT COURT

Copies to:
Counsel of record