# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| AUTO CHEM LABORATORIES, INC., *et al.*, | : | |
| | : | Case No. 3:07cv00156 |
| Plaintiffs, | : | |
| | : | District Judge Walter Herbert Rice |
| vs. | | Magistrate Judge Sharon L. Ovington |
| | : | |
| TURTLE WAX, INC., | : | |
| Defendant. | : | |
| | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Count IV of Plaintiffs' Second Amended Complaint asserts a claim of unjust enrichment. Plaintiffs allege that in various ways, over the course of years they have provided over three million dollars worth of benefits to Defendant Turtle Wax, Inc., but Turtle Wax has paid Plaintiffs only about $330,000 in compensation for those benefits. (Doc. #56 at ¶s 63-64). Plaintiffs maintain that Turtle Wax's retention of the value of these benefits without payment to Plaintiffs would be unjust.

This case is before the Court upon Defendant Turtle Wax, Inc.'s Motion to Dismiss Count IV of Plaintiffs' Second Amended Complaint (Doc. #55), Plaintiffs' Response in Opposition (Doc. #58), Turtle Wax's Reply (Doc. #61), and the record as a whole.

## II. Count IV of Plaintiffs' Second Amended Complaint

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

Two prior decisions in this case have found Plaintiffs' attempts to plead a claim of unjust enrichment wanting. *See* Doc. #32, 52. Plaintiffs' new paragraph 63 in their Second Amended Complaint – with Plaintiffs' new language underlined and in bold – states:

> Plaintiffs conferred benefits upon Turtle Wax, including but not limited to: **massive amounts of Mr. Culpepper's and Plaintiffs' employees' time**; expenditures of **time and** monies in the research and development of the SPS and TD product lines; **time used in the** development of a distribution company; **time spent in the** authorship and design of packaging and marketing materials for the SPS and TD lines; **time spent for** hands-on marketing and sales training for Turtle Wax personnel; **time spent in mentoring Turtle Wax personnel**; the disclosure of Plaintiffs' personal industry contacts and customers; **and the disclosure/communication of Plaintiffs' extensive knowledge of the auto appearance industry Plaintiffs acquired through years and years in the industry**.

(Doc. #56).

Plaintiffs also add an all-new paragraph 64, which states:

> As consideration for literally thousands of Plaintiffs' man-hours over the course of years, Plaintiffs received only approximately $330,000 from Turtle Wax for the TD line, total. On the other hand, the value of the benefits (including, but not limited to, Plaintiffs' time, industry knowledge, and industry contacts) Plaintiffs conferred on Turtle Wax far exceed $3 million by any reasonable measure. For example, Mr. Culpepper worked on this project fulltime for Turtle Wax for several years. At a rate of 2000 work hours per year (a conservative number for a small business owner), and at a reasonable consultant fee of $150 to $200, the fair market value of Mr. Culpepper's *time* per year, alone, was in the $300,000 to $400,000 range. Importantly, Mr. Culpepper's was not the only time spent by Plaintiffs working on the auto appearance lines for Turtle Wax (i.e., Gary Buck's time also). The categories of activities in which this time was spent are specified above in paragraph 63. Turtle Wax has thus been disproportionately and unjustly enriched – at Plaintiffs' considerable expense – with value in excess of $3 million given the duration of the parties' business relationship together. The value of the benefit conferred by Plaintiffs and retained by Turtle Wax thus far exceeds the $75,000 jurisdiction of this Court.

(Doc. #56) (original italics). The remaining paragraphs of Count IV state:

> 65. Retention of this value by Turtle Wax without payment to Plaintiffs would be unjust.
>
> 66. Plaintiffs seek restitution for the value of the benefits conferred upon Turtle Wax.

(Doc. #56).

## III. Applicable Standards

Defendants argue that dismissal of Plaintiffs' unjust enrichment claim under Fed. R. Civ. P. 12(b)(6) is warranted because it fails to meet the "plausibility" standard of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

The Court has explained in this case the applicable standards as follows:

> Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed. R. Civ. Proc. 8(a)(2). The Supreme Court explains that, although this standard does not mandate 'detailed factual allegations', the complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555,167 L.Ed. 2d 929, 127 S. Ct. 1955 (2007) (citations omitted).
>
> In Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009), the Supreme Court recently provided more guidance on this standard, which the Sixth Circuit summarizes as follows:
>
>> [T]o survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," [Twombly, 550 U.S. at 555], and to "state a claim to relief that is plausible on its face," id. at 570; see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.

>   Ct. at 1949. And although we must accept all well-pleaded factual allegations in the complaint as true, we need not "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)); see also Iqbal, 129 S. Ct. at 1949.
>
> Hensley Mfg. v. ProPride, Inc., 2009 U.S. App. LEXIS 19797, **9-10, 2009 FED App. 0324P (6th Cir. Sept. 3, 2009).[2]

(Doc. #52 at 6-7)(footnote added).

## IV. Discussion

Unjust enrichment occurs under Ohio law "when a party retains money or benefits which in justice and equity belong to another." *Liberty Mut. Ins. Co. v. Indus. Comm'n. of Ohio*, 40 Ohio St.3d 109, 532 N.E.2d 124, 125 (1988). To prevail on a claim of unjust enrichment, a plaintiff must show "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 465 N.E.2d 1298, 1302 (Ohio 1984). When discussing the "benefit" element, this Court previously explained that Ohio courts, including the Ohio Supreme Court, "focus on the value of what was provided to the defendant, as opposed to [focusing] on the damages incurred by the plaintiff...." (Doc. #32 at 41-43)(citing *E.g., Wilkin v. Fyffe*, 1996 Ohio App. LEXIS 3905, *13 (Ohio 2nd App. Dist. Sept. 13, 1996) and discussing *Hughes v. Oberholtzer*, 162 Ohio St. 330, 123 N.E.2d 393 (1954). "Stated another way courts look to see whether the complaint alleges more than that a benefit was conferred. Jan Bliwas v. Cent. States, 1998 U.S. Dist. LEXIS 23316, *13 (S.D. Ohio Feb. 13, 1998). Instead, it must allege unjust enrichment by seeking to recover the value of something furnished to the defendant, rather than

---

[2] After the Court's Decision issued, *Hensley* also became available at *Hensley Mfg. v. Propride, Inc.*, 579 F.3d 603 (6th Cir. 2009).

4

relying on express promises. Landskroner v. Landskroner, 154 Ohio App. 3d 471, 490, 797 N.E.2d 1002 (Ohio 8th App. Dist. 2003)." (Doc. #32 at 43)(footnote omitted).

Turtle Wax contends that Plaintiffs' new allegations in Count IV of their Second Amended Complaint fail to state a plausible claim for unjust enrichment because their allegations merely state additional benefits conferred and arbitrarily assign a dollar value to the additional benefits without alleging the requisite value retained by Turtle Wax. This contention lack merit. Unlike their prior pleadings, Plaintiffs' new Count IV connects various categories of benefits they provided to Turtle Wax with an alleged value in time and money. *See* Doc. #56 at ¶63. Plaintiffs then raise specific allegations concerning the actual value of the time Plaintiffs spent engaged in the activities described in paragraph 63. And Plaintiffs propose, by way of example, a method for calculating the actual value of the benefits they conferred upon Turtle Wax. Plaintiffs allege:

> For example, Mr. Culpepper worked on this project fulltime for Turtle Wax for several years. At a rate of 2000 work hours per year (a conservative number for a small business owner), and at a reasonable consultant fee of $150 to $200, the fair market value of Mr. Culpepper's *time* per year, alone, was in the $300,000 to $400,000 range. Importantly, Mr. Culpepper's was not the only time spent by Plaintiffs working on the auto appearance lines for Turtle Wax (i.e., Gary Buck's time also). The categories of activities in which this time was spent are specified above in paragraph 63.

(Doc. #56 at ¶64). In this manner and contrary to Turtle Wax's contention, Plaintiffs did not arbitrarily assign a dollar value to the additional benefits they alleged to have conferred upon Turtle Wax. Defendants are correct, in part, to the extent they point out that Plaintiffs did not specifically allege "the requisite *value retained* by Turtle Wax," (Doc. #55 at 6)(emphasis in original). Turtle Wax also argues that Plaintiffs have not alleged "any *value unjustly retained by Turtle Wax* to support a claim of unjust enrichment." *Id*. (emphasis in original). But, Turtle Wax's focus is too narrow. Considering all of Plaintiffs' allegations in Count IV together with their other factual allegations, *see* Doc. #56 at ¶s 8-37, they sufficiently allege facts, which if true, show that

5

Turtle Wax induced Plaintiffs to devote millions of dollars worth of time and resources for the development of a product lines, marketing strategies, and a distribution company, and to disclose to Plaintiffs' personal industry contacts, all to the benefit of Turtle Wax. Plaintiffs also allege facts showing "the retention of such benefits by Turtle Wax" without adequate compensation, and Plaintiffs' assign dollar value to the benefits they provided, calculated by a method adequate for pleading purposes, and they allege an very large inequity in the difference between the value of the benefits conferred and the amount of compensation Turtle Wax provided. Consequently, in light of all their factual allegations, Plaintiffs have pled sufficient facts to create a reasonable inference as to each element of an unjust enrichment claim, and as a result, their unjust enrichment claim is plausible within the meaning of *Iqbal*, __U.S. at __, 129 S. Ct. at 1949.

Turtle Wax also contends that Plaintiffs fail to allege how Turtle Wax's compensation was deficient to any value retained by Turtle Wax. This argument lacks merit because it fails to draw reasonable inferences from the allegations Plaintiffs' raise. Plaintiffs have alleged a sufficiently specific value – at least three million dollars – in benefits they conferred upon Turtle Wax, and that Turtle Wax paid only about $330,000 for those benefits. The difference between these figures is sufficient to show the amount of compensation provided by Turtle Wax was deficient since the actual value Turtle Wax retained was far greater then the amount it compensated Plaintiffs.

Turtle Wax lastly contends that Plaintiffs' unjust enrichment claim fails because they have failed to allege a nexus between Turtle Wax's "enrichment" and Plaintiffs' "expense." Pointing to *Premier Business Group, LLC v. Red Bull of N. Am.*, 2009 WL 3242050 at *12-*13 (N.D. Ohio 2009) as a supporting example, Turtle Wax argues, "Plaintiffs attempt to create a nexus between Turtle Wax's enrichment and Plaintiffs' expense by conflating the two, *i.e.*, by claiming that the benefit received by Turtle Wax and was Plaintiff's 'time spent.'... Plaintiffs' attempt fails, however, because they cannot articulate or explain how their loss is connected to an (as yet unidentified) Turtle Wax

gain. Moreover, Plaintiffs ignore their admission that Mr. Culpepper entered into a consulting agreement with Turtle Wax and cannot explain how any benefits were not a consequence of that contractual relationship as opposed to an unjust enrichment." (Doc. #55 at 10). These contentions lack merit because Plaintiffs have alleged facts sufficient to show, if true, that they conferred certain benefits upon Turtle Wax, benefits which carried a particular monetary value, which in turn Turtle Wax unjustly retained without providing Plaintiffs' adequate compensation. Additionally, to the extent Plaintiffs have alleged the existence of a consulting contract, they are permitted to plead alternative and even inconsistent claims for relief. *See* Fed. R. Civ. P. 8(d). Although discovery might (or might not) reveal that the scope of the parties' purported consulting contract encompassed the benefits Plaintiffs describe in support of their unjust enrichment claim, the allegations of Plaintiffs' Second Amended Complaint are not inherently contradictory in a manner similar to the situation in *Premier Business Group v. Red Bull*, 2000 WL 3242050 at *12-13, the case upon which Turtle Wax relies as a supporting example.

Accordingly, Turtle Wax's Motion to Dismiss Count IV lacks merit.

## IT IS THEREFORE RECOMMENDED THAT:

Defendant Turtle Wax, Inc.'s Motion to Dismiss Count IV of Plaintiffs' Second Amended Complaint (Doc. #55) be DENIED.

February 23, 2010            s/ Sharon L. Ovington
                             Sharon L. Ovington
                             United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).