IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

AUTO CHEM LABORATORIES, INC.,    :
*et al*.

     Plaintiffs,           :

                        Case No. 3:07cv156

          vs.            :

                        JUDGE WALTER HERBERT RICE

TURTLE WAX, INC.,          :

     Defendant.         :

---

**DECISION AND ENTRY ADOPTING MAGISTRATE JUDGE'S REPORT
AND RECOMMENDATIONS (DOC. #65); OVERRULING DEFENDANT'S
OBJECTIONS THERETO (DOC. #67) AND DEFENDANT'S MOTION TO
DISMISS (DOC. #55); AND OVERRULING, IN PART, AND
SUSTAINING, IN PART, PLAINTIFFS' MOTION IN LIMINE (DOC. #39)**

---

The parties herein (Plaintiffs Auto Chem Laboratories, Inc., Procraft

Industries, Inc., and Bruce K. Culpepper (collectively referred to as "Auto Chem")

and Defendant Turtle Wax, Inc. ("Turtle Wax")), were previously engaged in

various business dealings involving developing, manufacturing and marketing high-

end professional auto appearance products.  It is the break-down of this business

relationship that prompted the Plaintiffs to file their original Complaint, alleging:  (1)

promissory estoppel (Count I); (2) fraudulent misrepresentation (Count II); (3)

fraudulent concealment (Count III); (4) negligent misrepresentation (Count IV); (5)

breach of implied in law contract (unjust enrichment) (Count V); (6) breach of

express contract (Count VI); and conversion (Count VII). Doc. #2 (Complaint).

Subsequently, the Plaintiffs voluntarily dismissed the claims for negligent misrepresentation and conversion. Doc. #15 (Not. of Vol. Dismissal). Also, the Defendant filed a Motion to Dismiss (Doc. #10), which the Court overruled, in part, and sustained, in part, thereby dismissing the claims for promissory estoppel, unjust enrichment and breach of express contract. Doc. #32. As to the unjust enrichment claim, the Court dismissed the same, upon finding that the Plaintiffs had not properly alleged that the Defendant was unjustly enriched, at the expense of the Plaintiffs. Id. at 38-45. The Defendant eventually filed an Answer to the Plaintiff's Complaint. Doc. #34. At this stage of the litigation, then, the only claims remaining were the claims for fraudulent misrepresentation and fraudulent concealment.

Thereafter, the Plaintiffs filed a Motion for Leave to File First Amended Complaint, wherein they attempted to re-plead the unjust enrichment claim. Doc. #36. The Court overruled said Motion, finding that the underlying Report and Recommendations by the Magistrate Judge (which concluded, in sum, that the proposed Amended Complaint "[did] not add any significant information to the Complaint about the value of the benefits conferred upon Turtle Wax") did not "contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." Doc. #52 at 10, 13. The Court also granted the Plaintiffs leave to file another Motion to Amend Complaint, if said Amended Complaint complied with the Court's stated parameters, as to the unjust

enrichment claim. Id. at 13-14.

In the meantime, the parties mediated this matter, with the Court serving as mediator, unfortunately to an unsuccessful conclusion. See Doc. #37. As a result of said mediation and in an attempt to aid the parties in potential future settlement negotiations, the Court instructed the Plaintiffs to file a Motion in Limine, seeking to have the Court rule favorably on the Plaintiffs' theory/measure of damages. Id. The Plaintiffs timely filed said Motion and the parties thereafter filed response and reply memoranda. Docs. #39, #40, #42. Not knowing of the arrangement between the Court and the parties regarding the use of the Court's response to said Motion to aid in future potential settlement negotiations, the Magistrate Judge denied the Motion in Limine, without opinion, as being premature. Doc. #44.

The Plaintiffs subsequently filed a Motion to File Second Amended Complaint, which the Court sustained. Doc. #53; Not. Order, dtd. Oct. 2, 2009. The Plaintiffs thereafter filed the Amended Complaint and the Defendant answered.[1] Docs. #54, #56. Further, the Defendant once again moved to dismiss

---

[1]In their Amended Complaint, the Plaintiffs reassert their claims for fraudulent misrepresentation and fraudulent concealment, along with the claim for unjust enrichment. Doc. #56 at 12-15. The Plaintiffs also attempt to reassert their claims for promissory estoppel, breach of express contract and conversion (but not negligent misrepresentation), all of which were either previously voluntarily dismissed or dismissed by the Court. Docs. #15, #32. Given that an Answer had already been filed at this time (Fed. R. Civ. Proc. 15(a)), and the Plaintiffs neither asked for nor received permission to re-plead their previously dismissed claims, the Court concludes that the only viable claims remaining in this litigation are the claims for unjust enrichment (pending the Court's ruling herein, on the Motion to Dismiss), fraudulent misrepresentation and fraudulent concealment. Both parties

3

the Plaintiffs' unjust enrichment claim, the Magistrate Judge filed a Report and

Recommendations wherein she recommended denying the same and the Defendant

filed an objection thereto. Docs. #55, #65, #67.

Presently before the Court is the Defendant's Motion to Dismiss the unjust

enrichment claim (Doc. #55), the Magistrate Judge's Report and Recommendations

(Doc. #65) and the Defendant's objections thereto (Doc. #67), as well as the

unresolved Motion in Limine, pertaining to the theory/measure of damages (Doc.

#39). The Court will begin with a consideration of the filings pertaining to the

Motion to Dismiss and then turn to an analysis of the Motion in Limine.


I.      Motion to Dismiss (Doc. #55)

        A.      Motion to Dismiss Standard

        In Prater v. City of Burnside, Ky., 289 F.3d 417 (6th Cir. 2002), the Sixth

Circuit reiterated the fundamental principles which govern the ruling on a motion to

dismiss under Rule 12(b)(6):

>   The district court's dismissal of a claim pursuant to Rule 12(b)(6) of
>   the Federal Rules of Civil Procedure is also reviewed de novo.
>   Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999),
>   overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S.
>   506 (2002). When deciding whether to dismiss a claim under Rule

---

have briefed the issues that are presently before the Court, without reference to
the additional claims (promissory estoppel, breach of express contract and
conversion). Thus, Court assumes that the parties are in agreement that said
claims are not presently at issue. Should the Plaintiffs believe differently, however,
they need to inform the Court about the same, post haste.

> 12(b)(6), "[t]he court must construe the complaint in a light most
> favorable to the plaintiff, and accept all of [the] factual allegations as
> true." Id. (citation omitted).

Id. at 424. In Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), the Supreme

Court noted that Rule 8(a)(2) of the Federal Rules of Civil Procedure merely requires

that a complaint contain "a short and plain statement of the claim showing that the

pleader is entitled to relief." Id. at 212. Therein, the Court explained further:

> Such a statement must simply "give the defendant fair notice of what
> the plaintiff's claim is and the grounds upon which it rests." Conley v.
> Gibson, 355 U.S. 41, 47 (1957). This simplified notice pleading
> standard relies on liberal discovery rules and summary judgment
> motions to define disputed facts and issues and to dispose of
> unmeritorious claims. See id., at 47-48; Leatherman v. Tarrant
> County Narcotics Intelligence and Coordination Unit, 507 U.S. 163,
> 168-169 (1993). "The provisions for discovery are so flexible and the
> provisions for pretrial procedure and summary judgment so effective,
> that attempted surprise in federal practice is aborted very easily,
> synthetic issues detected, and the gravamen of the dispute brought
> frankly into the open for the inspection of the court." 5 C. Wright &
> A. Miller, Federal Practice and Procedure § 1202, p. 76 (2d ed.
> 1990).

Id. at 512-13. In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the

Supreme Court rejected the standard established in Conley v. Gibson, 355 U.S. 41,

45-46 (1957), that a claim should not be dismissed "unless it appears beyond

doubt that the plaintiff can prove no set of facts in support of his claim which

would entitle him to relief." The Supreme Court recently expounded upon

Twombly in Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), writing:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain
> a "short and plain statement of the claim showing that the pleader is

5

entitled to relief." As the Court held in Twombly, 550 U.S. 544, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the–defendant–unlawfully– harmed–me accusation. Id., at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557 (brackets omitted).

Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)). Rule 8 marks a notable and generous departure from the hyper–technical, code–pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context–specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]"–"that

6

the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Id. at 1949-50.

In sum, on the plausibility issue, the factual allegations in the complaint need to be sufficient "to give notice to the defendant as to what claims are alleged, and the plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." Fritz v. Charter Twp. of Comstock, 592 F.3d 718, 722 (6th Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1949-50).  Further, "a legal conclusion [may not be] couched as a factual allegation" and mere "recitations of the elements of a cause of action" are insufficient to withstand a motion to dismiss. Id. (quoting Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 609 (6th Cir. 2009)).


B.    Standard of Review of Magistrate Judge's Decisions

The Plaintiff's Motion to Dismiss is a dispositive motion.  Therefore, pursuant to 28 U.S.C. § 636(b)(1), this Court must conduct a de novo review of the Report and Recommendations. United States v. Curtis, 237 F.3d 598, 603 (6th Cir. 2001) (noting that district courts must conduct a de novo review of dispositive motions, while the clearly erroneous standard of review is applicable to non-dispositive motions).

7

C.    Analysis of Present Motion to Dismiss

As previously mentioned, the Court has twice ruled upon the sufficiency of the Plaintiffs' unjust enrichment claim, both times finding it deficient.  In essence, the Court found the pleadings wanting, because they did not allege that the transfer in consideration from the Defendant to the Plaintiffs was deficient, as compared to the value of the benefits allegedly conferred upon the Defendant. Doc. #35 at 43-44; Doc. #52 at 10-13.  The Plaintiffs have now filed an Amended Complaint wherein they plead the following fact, which is arguably relevant to the unjust enrichment claim:

> Upon information and belief, George Violetto heard, or overheard, Mr. Wingert, Mr. Boitz, and Mr. Zadek admit that Turtle Wax had gotten Plaintiffs (Auto Chem and Mr. Culpepper) to do all of "Turtle Wax's R&D for free."

Doc. #56 (Am. Compl.) ¶ 31.  As to the actual unjust enrichment claim in the Amended Complaint, that claim reads as follows:

> 63.    Plaintiffs conferred benefits upon Turtle Wax, including but not limited to:  massive amounts of Mr. Culpepper's and Plaintiffs' employees' time; expenditures of time and monies in the research and development of the SPS and TD product lines; time used in the development of a distribution company; time spent in the authorship and design of packaging and marketing materials for the SPS and TD lines; time spent for hands-on marketing and sales training for Turtle Wax personnel; time spent in mentoring Turtle Wax personnel; the disclosure of Plaintiffs' personal industry contacts and customers; and the disclosure/ communication of Plaintiffs' extensive knowledge of the auto appearance industry Plaintiffs acquired through years and years in the industry.

8

64.  As consideration for literally thousands of Plaintiffs' man-hours over the course of years, <u>Plaintiffs received only approximately $330,000 from Turtle Wax for the TD line, total</u>.  On the other hand, <u>the value of the benefits</u> (including, but not limited to, Plaintiffs' time, industry knowledge, and industry contacts) <u>Plaintiffs conferred on Turtle Wax far exceed $3 million by any reasonable measure</u>.  For example, Mr. Culpepper worked on this project fulltime for Turtle Wax for several years.  At a rate of 2000 work hours per year (a conservative number for a small business owner), <u>and at a reasonable consultant fee of $150 to $200</u>, the fair market value of Mr. Culpepper's *time* per year, alone, was in the $300,000 to $400,000 range.  Importantly, Mr. Culpepper's was not the only time spent by Plaintiffs working on the auto appearance lines for Turtle Wax (i.e., Gary Buck's time also).  The categories of activities in which this time was spent are specified above in paragraph 63.  Turtle Wax has thus been disproportionately and unjustly enriched – at Plaintiffs' considerable expense – with value in excess of $3 million given the duration of the parties' business relationship together.  The value of the benefit conferred by Plaintiffs <u>and retained by Turtle Wax</u> thus far exceeds the $75,000 jurisdiction of this Court.

65.  Retention of this value by Turtle Wax without payment to Plaintiffs would be unjust.

66.  Plaintiffs seek restitution for the value of the benefits conferred upon Turtle Wax.

<u>Id.</u> ¶¶ 63-66 (emphasis added).  In her Report and Recommendations, the Magistrate Judge applied the standards set forth by the Supreme Court in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L. Ed.2d 929 (2007) and <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S.Ct. 1937, 173 L. Ed.2d 868 (2009).  In so doing, she determined that the Amended Complaint adequately pled that the Defendant retained money or benefits, which in justice and equity

belonged to the Plaintiffs. Doc. #65 at 4-6, 8. She also determined that the Plaintiffs had alleged sufficient facts to show that these benefits carried a particular monetary value and that the Defendant unjustly retained the same without providing Plaintiffs' adequate compensation, thereby properly alleging a nexus between the Defendant's enrichment and the Plaintiffs' expense. Id. The Defendant objects to the Magistrate Judge's Report and Recommendations, arguing that the Plaintiffs still have not alleged any value unjustly retained by the Defendant and have not plead any facts that causally connect the Plaintiffs' loss with the Defendant's gain. Doc. #67.

In the present case, the Defendant first argues that the Magistrate Judge did not properly consider that the Amended Complaint still does not allege any value unjustly retained by the Defendant. The Defendant errs, however, given that the Report and Recommendations properly indicates that the Plaintiffs have alleged facts showing the retention of benefits by Turtle Wax, without adequate compensation, and also assigns value to the benefits allegedly provided, with a demonstrated inequity in the difference between the value of the benefits conferred and the amount of compensation Turtle Wax provided. Doc. #65 at 6; see also Doc. #56 (Am. Compl.) ¶ 31 (alleging that Turtle Wax acknowledged that it had gotten Plaintiffs to do its R&D for free); id. ¶¶ 63-64 (alleging that the transfer in consideration from the Defendant to the Plaintiffs was deficient, as compared to the value of the benefits allegedly conferred upon the Defendant, for

10

example, by noting the considerably higher consulting costs the Defendant would have incurred for the services it received from the Plaintiffs.

The Defendant also argues that the "[t]he complaining party must ordinarily show not only loss on one side but also gain on the other, with a tie of causation between them." Doc. #67 (quoting 18 Oh. Jur. Contracts § 299 (which cites Fairfield Ready Mix v. Walnut Hills Assoc., Ltd., 60 Ohio App. 3d 1, 572 N.E.2d 114 (Hamilton Cty. 1988))). The Defendant goes on to contend that the Magistrate Judge erred in concluding that the Amended Complaint adequately pled this causal connection. Just as Defendant's previous argument, this argument is lacking. The Magistrate Judge concluded that the Plaintiffs had alleged facts sufficient to show that they conferred certain benefits upon Turtle Wax, "benefits which carried a particular monetary value, which in turn Turtle Wax unjustly retained without providing Plaintiffs' adequate compensation." Doc. #65 at 7. The Court agrees. The Amended Complaint provides sufficient allegations to give rise to a reasonable, and hence plausible, inference supporting the conclusion that there is a causal link between the Defendant's alleged gain and the Plaintiffs' alleged loss. See Doc. #56 (Am. Compl.) ¶¶ 31, 63-64 (alleging the Defendant received "free" R&D from Plaintiffs and received numerous services from Plaintiffs at greatly reduced value, as compared to what it would have paid a consultant for similar services).

Therefore, the Court ADOPTS the Magistrate Judge's Report and

11

Recommendations (Doc. #65), wherein she recommends OVERRULING the

Defendant's Motion to Dismiss Count IV of Plaintiffs' Second Amended Complaint

(Doc. #55), and OVERRULES the Defendant's objections thereto (Doc. #67).


II.    Motion in Limine (Doc. #39)

As was previously mentioned, in an attempt to aid the parties in potential

future settlement negotiations, the Court instructed the Plaintiffs to file a Motion in

Limine, seeking to have the Court rule on their theory/measure of damages. Id.

The Plaintiffs timely filed said Motion and the parties thereafter filed response/reply

memoranda. Docs. #39, #40, #42.  Accordingly, the Court will now determine the

proper measure of damages for the three claims remaining in this litigation, to wit:

fraudulent misrepresentation, fraudulent concealment and unjust enrichment.[2]

_____

[2]In their Motion (Doc. #42), the Plaintiffs attempt to argue that the
promissory estoppel and breach of contract claims are still potentially at issue in
the present case, despite the fact that the Court previously dismissed said claims
(Doc. #32).

> Here, Turtle Wax is treating Plaintiffs' contract claims as if they have
> been permanently barred from being presented at trial, as opposed to
> having been dismissed as having been incompletely *plead* in a
> Complaint.  However, and under Federal Rule of Civil Procedure 15(b),
> a party is allowed to amend its pleadings to revive dismissed claims,
> or add new ones, "freely" as they conform to the evidence uncovered
> or raised *even at trial*.

Doc. #42 at 3 (emphasis in original).  The Plaintiffs take this contention one step
further in asserting that the Court should rule on the appropriate measure of
damages for said claims, given their potential viability in this litigation. Id. at 4
("Accordingly, Plaintiffs are presumptively entitled to any and every contractual

A.    Measure of Damages for Fraud Claims

To put this issue into context, the Court will begin with a review of the Plaintiffs' fraud claims. As Count II in their Amended Complaint, the Plaintiffs allege fraudulent misrepresentation. Specifically, Turtle Wax allegedly represented that it would make Auto Chem the primary supplier of certain of its products and would purchase certain quantities of those products, if Auto Chem undertook the research and development; however, Turtle Wax had no intention of fulfilling its represented annual purchases of the products. Doc. #56 ¶¶ 44-53. Count III alleges fraudulent concealment. Specifically, Turtle Wax allegedly concealed the fact that it never intended to fulfill the representations it made concerning its partnership with Auto Chem, its intention to purchase certain amounts of products and its intention to purchase Auto Chem itself. Id. ¶¶ 54-61.

The parties initially debate whether the appropriate measure of damages for the fraud claims is "benefit-of-the-bargain" damages, which allow a plaintiff to recover the difference between the value of the transaction as represented and the actual value received as a result of the transaction. Doc. #39 (Pls.' Mem. Supp.) at

---

damage remedy/measure allowable by law here, whether that contractual relationship was fraudulently induced by Turtle Wax, or not.").

The Defendant has filed an Answer to the Amended Complaint (Doc. #54), thus the Plaintiffs are no long permitted to amend their Amended Complaint, except with the Defendant's consent or leave of Court. Fed. R. Civ. Proc. 15(a). Furthermore, given that the Court has dismissed the promissory estoppel and breach of contract claims, it would be mere speculation for the Court to assume that those claims may later be viable and, therefore, it is inappropriate for the Court to opine herein on the proper measure of damages for such.

1-4; Doc. #40 (Def.'s Mem. Opp'n) at 4-6. The Defendant is correct in stating that courts have generally awarded benefit-of-the-bargain damages only in cases involving enforceable contracts.[3] Schambach v. Afford a Pool & Spa, 2009 Ohio App. LEXIS 5706, *6, 2009 Ohio 6809 (Ohio 7th App. Dist. Dec. 17, 2009) ("A party proving breach of contract is entitled to the benefit of his or her bargain."); Grothaus v. Warner, 2008 Ohio App. LEXIS 5565, **7-8, 2008 Ohio 6683 (Ohio 10th App. Dist. Dec. 18, 2008) ("A party that establishes a breach of contract is entitled to the 'benefit of his bargain'.") (quoting City of Girard v. Leatherworks P'ship, 2005 Ohio App. LEXIS 4304, 2005 Ohio 4779 (Ohio 11th App. Dist. Sept. 9, 2005); see also Roboserve, Inc. v. Kato Kagaku Co., 78 F.3d 266, 274 (7th Cir. 1996) (concluding that under Illinois law, "[benefit-of-the-bargain] damages are clearly not appropriate . . . in the absence of an actual, binding agreement"); Hunter v. SMS, Inc., 843 F.2d 1391, 1988 U.S. App. LEXIS 4394, *28 (6th Cir. 1988) ("The Michigan cases applying the benefit of the bargain damages rule have generally involved parties who have entered into enforceable contracts, but the defendant fraudulently misrepresented the value of what plaintiff was to receive under the contract."). Thus, benefit-of-the-bargain damages are only appropriate in

---

[3]In their reply memorandum, the Plaintiffs do not seem to contest the Defendant's assertion that benefit-of-the-bargain damages are only appropriate in breach of contract claims. Instead, they seem to be arguing that they intend to amend their Amended Complaint to include a breach of contract claim and, thus, the Court should address the same herein. As the Court noted *supra*, however, it is inappropriate for the Court to rule on the measure of damages for a breach of contract claim that is purely speculative, at this stage of the litigation.

fraud claims that are based on a contract. If benefit-of-the bargain damages are appropriate, however, a plaintiff is entitled to "the difference between the actual value of the property at the time of the purchase and its value if the property had been what it was represented to be," Molnar v. Beriswell, 122 Ohio St. 348, 352, 171 N.E. 593 (1930); see also Homewood Homes, Inc. v. Helwig, 2009 Ohio App. LEXIS 1437, **29-30 (Ohio 10th App. Dist. Apr. 9, 2009) (Sadler, J., concurring) (same), or, stated another way, "the difference in the value between what a plaintiff has received and the actual value of what he would have received if the representations had been true." Twin Fires Inv., LLC v. Morgan Stanley Dean Witter & Co., 837 N.E.2d 1121, 1134 n.24 (Mass. 2005) (internal quotation omitted).

The parties do not propose an alternative method of computing damages for the fraud claims, in the absence of proof of a valid contract. Thus, the Court is left to its own study of Ohio law to determine the appropriate measure of damages, in this situation. The Court notes that Ohio courts have generally followed, whether specifically noted or not, the principles set forth in the Restatement (Second) of Torts when discerning the propriety and amount of damages in fraud cases. E.g., DeFilippo v. Szabo, 1980 Ohio App. LEXIS 14262, **3-4 (Ohio 9th App. Dist. May 14, 1980) (applying Restatement (Second) of Torts § 549 to analysis of measure of damages for fraud claim); Burke v. Gene Hoffman Dev. Crop., 1977 Ohio App. LEXIS 8099, **16-18 (Ohio 8th App. Dist. Apr. 14, 1977) (same). Specifically,

15

the applicable Restatement Section reads as follows:

> (1) The recipient of a fraudulent misrepresentation is entitled to recover as damages in an action of deceit against the maker the pecuniary loss to him of which the misrepresentation is a legal cause, including
>
>> (a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and
>>
>> (b) pecuniary loss suffered otherwise as a consequence of the recipient's reliance upon the misrepresentation.
>
> (2) The recipient of a fraudulent misrepresentation in a business transaction is also entitled to recover additional damages sufficient to give him the benefit of his contract with the maker, if these damages are proved with reasonable certainty.

Restatement (Second) of Torts, § 549 (1977) ("Measure of Damages for

Fraudulent Misrepresentation").  Damages awarded under paragraph (1) are

referred to as "out-of-pocket" damages, while those awarded under paragraph (2)

are "benefit-of-the-bargain" damages.[4] See Burke, 1977 Ohio App. LEXIS 8099 at

---

[4]The comments to the Restatement note that, in cases where a contract exists between the parties, the fraud victim is allowed to choose either benefit-of-the-bargain damages or out-of-pocket damages, whichever is more advantageous. Restatement (Second) of Torts § 549 cmts. g-h. Ohio courts have followed this general approach, in allowing a defrauded party to a contract to elect out-of-pocket expenses, rather than benefit-of-the-bargain damages. E.g., Brewer v. Brothers, 82 Ohio App. 3d 148, 154 (Ohio Ct. App., Warren County 1992) ("Given the practical difficulties of establishing the value of the property with and without the defects in these types of cases, we accept the proposition that repair or replacement cost is an adequate measure of damages, particularly given that the goal is to compensate the owner for the loss sustained."); Mid-America Acceptance Co. v. Lightle, 63 Ohio App. 3d 590, 599, 579 N.E.2d 721 (Ohio 10th App. Dist. 1989) (allowing defrauded party seeking rescission of a fraudulently induced contract out-of-pocket expenses, as damages).  Some courts, however, have restricted plaintiffs to

**16-18.

In pertinent part, comment g to this Section explains the circumstances

when damages are appropriate only under paragraph (1), as compared to under

either paragraph (1) or paragraph (2), as follows:

> Subsection (1) states the rules normally applicable to determine the
> measure of damages recoverable for a fraudulent misrepresentation in
> a tort action of deceit.  If the plaintiff is content with these damages,
> he can always recover them.  <u>The rules stated in Subsection (1) are</u>
> <u>the logical rules for a tort action, since the purpose of a tort action is</u>
> <u>to compensate for loss sustained and to restore the plaintiff to his</u>
> <u>former position, and not to give him the benefit of any contract he has</u>
> <u>made with the defendant</u>.  <u>When the plaintiff has not entered into any</u>
> <u>transaction with the defendant</u> but has suffered his pecuniary loss
> through reliance upon the misrepresentation in dealing with a third
> person, <u>these are the rules that must of necessity be applied.</u>

<u>Id.</u> cmt. g.  Thus, in a situation where a plaintiff has suffered loss as a result of

tortuously fraudulent conduct not involving a contract, the plaintiff is entitled to

recoup his out-of-pocket expenses, which the Restatement defines as " the

pecuniary loss to him of which the misrepresentation is a legal cause, including []

the difference between the value of what he has received in the transaction and its

purchase price or other value given for it[,] and [any] pecuniary loss suffered

otherwise as a consequence of the recipient's reliance upon the

misrepresentation." <u>Id.</u> § 549; <u>Burke</u>, 1977 Ohio App. LEXIS 8099, *18 (noting

benefit-of-the-bargain damages, unless the same were difficult to calculate. <u>E.g.</u>,
<u>Helfrich v. Strickland</u>, 2009 Ohio App. LEXIS 4055, *11, 2009 Ohio 4828 (Ohio
5th App. Dist. Sept. 11, 2009) (concluding that "the cost of repair or replacement
cost is a proper measure of damages only when it is difficult to establish the value
of the property with and without the defects").

that, in absence of contract between the parties, out-of-pocket losses were appropriate, which included overhead and architect's fees, but not lost profits); see also Elliott v. Aspen Brokers, 811 F. Supp. 586, 591 (D. Colo. 1993) (noting that, if a plaintiff seeks damages for misrepresentation from a defendant not party to a transaction, "the plaintiff may recover only his pecuniary loss" and that the same "do[es] not include lost profits") (citing, among others, Restatement (Second) of Torts § 549 cmt. g); Giammanco v. Giammanco, 253 Ill. App. 3d 750, 760 (Ill. App. Ct. 2d Dist. 1993) (same).

Thus, to the extent the Plaintiffs may later prove that the Defendant is liable to them for fraud, based on a valid contract that existed between the parties,[5] they are entitled to benefit-of-the bargain damages, which are defined as the difference in value between what the Plaintiffs received and the actual value of what they would have received if the representations had been true.[6] Molnar v. Beriswell, 122

---

[5]The Court previously determined that the Plaintiffs had not properly pled the existence of a valid contract when challenged as a part of the Defendant's Motion to Dismiss the Plaintiffs' contract claims. Doc. #32 at 18-30. The Defendant has not, however, asked the Court to rule on the sufficiency of the Plaintiffs' pleadings, as they pertain to allegations of tortuously fraudulent conduct based on a contractual relationship. Thus, the Plaintiffs are not foreclosed from later demonstrating the existence of a valid contract, for purposes of substantiating their claim that they are entitled to benefit-of-the-bargain damages for their fraud claims.

[6]The Defendant correctly notes that benefit-of-the-bargain damages include lost "net profits" and, further, must be shown with reasonable certainty.

Recovery of damages for lost profits is subject to the rule that the damages must be shown with [reasonable] certainty. Further, loss of profits means loss of net profits. In order to prove loss of net profits,

Ohio St. 348, 352, 171 N.E. 593 (1930). Should the Plaintiffs later prove that the Defendant is liable to them for fraud, but not based on a valid contract, however, they are only entitled to the pecuniary loss of which the fraudulent conduct was a legal cause or, in other words, to be compensated for the loss they sustained and to be restored to their former position.[7] Restatement (Second) of Torts § 549 & cmt. g; see also Burke, 1977 Ohio App. LEXIS 8099, **16-18.

Moving on to related issues, the Court notes that punitive damages may be awarded in fraud cases, upon a showing of malice.[8] Roberts v. Mason, 10 Ohio St.

---

Ohio law requires proof of appropriate expenses, i.e., expenses attributable to the production of profit. The appropriate expenses to be deducted from gross profits in order to compute net profits is dependent upon the particular circumstances of each case.

P.E. Synder & Son, Inc. vs. Clintmont Co., 1983 Ohio App. LEXIS 15932, **5-6 (Ohio 12th App. Dist. Mar. 16, 1983).

[7]While the Ohio Supreme Court has not ruled on this particular issue, Ohio appellate courts have routinely applied the precepts of the Restatement (Second) of Torts, in benefit-of-the-bargain situations, as described above. Further, at least one Ohio Appellate Court has used the "out-of-pocket" expense approach in a situation not involving a contractual relationship between the parties, as have courts in other jurisdictions. See Burke, 1977 Ohio App. LEXIS 8099, **16-18; see also Elliott, 811 F. Supp. 586, 591 (D. Colo. 1993); Giammanco, 253 Ill. App. 3d 750, 760 (Ill. App. Ct. 2d Dist. 1993).

On another point, it goes without saying that the Defendant would only be liable to the Plaintiffs for damages that flow from the alleged fraudulent conduct. Thus, the Defendant's contention that the Court should so limit the Plaintiffs' recovery is well taken. Doc. #40 at 7-8.

[8]The Ohio Supreme Court defines "malice" as "(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." Malone v. Courtyard by Marriott

277, syl. ¶ 1 (1859). Further, Ohio courts have determined that reasonable attorney fees may also be awarded in fraud cases. Curran v. Vincent, 175 Ohio App. 3d 146, 153, 885 N.E.2d 964 (Ohio 1st App. Dist. 2007) (citing Gates v. Toledo, 57 Ohio St. 105, 111, 48 N.E. 500 (1897)).


   B.   Measure of Damages for Unjust Enrichment Claim

      The parties generally agree that Ohio courts recognize that "unjust enrichment entitles a party . . . to restitution of the reasonable value of the benefit conferred." Grothaus v. Warner, 2008 Ohio App. LEXIS 5565, **7-8, 2008 Ohio 6683 (Ohio 10th App. Dist. Dec. 18, 2008) (quoting Blue Chip Pavement Maintenance, Inc. v. Ryan's Family Steak Houses, Inc., 2004 Ohio App. LEXIS 2988, 2004 Ohio 3357, ¶18 (Ohio 12th App. Dist. June 28, 2004)). Although the parameters of this damage computation will vary depending on the facts of each case, courts have determined that restitution is properly awarded in "a reasonable amount for services[,] in the absence of a specific contract," Guardian Tech., Inc. v. Chelm Props., Inc., 2002 Ohio App. LEXIS 4947, *5, 2002 Ohio 4893 (Ohio 8th App. Dist. Sept. 19, 2002) (citing Thomas & Boles v. Burns, 1994 Ohio App. LEXIS 1390 (Ohio 8th App. Dist. Mar. 31, 1994)), or for the "monetary amount expended for the services provided and materials used." City of Girard v.

---

P'ship, 74 Ohio St. 3d 440, 445-46, 659 N.E.2d 1242 (1996) (quoting Preston v. Murty, 32 Ohio St. 3d 334, syl., 512 N.E.2d 1174 (1987)).

Leatherworks P'ship, 2005 Ohio App. LEXIS 4304,*19, 2005 Ohio 4779 (Ohio

11th App. Dist. Sept. 9, 2005) (citing, among others, St. Vincent Medical Ctr. v.

Sader, 100 Ohio App. 3d 379, 384, 654 N.E.2d 144 (Ohio 6th App. Dist. 1995)).

Further, as the Defendant correctly points out, "[t]he amount which a party can

recover under the theory of quantum meruit [the purpose of which is to prevent

unjust enrichment] is subject to a double limitation: '(1) plaintiff cannot recover

more than the actual value of the services rendered for defendant, including the

value of materials and fair profit if and when applicable; and (2) plaintiff cannot

recover more than the amount defendant was enriched by his rendering of

services.'" Vaughan v. MKM of Toledo, 2004 Ohio App. LEXIS 1717, *10, 2004

Ohio 1969 (Ohio 6th App. Dist. Apr. 16, 2004) (quoting Sonkin & Melena Co.,

L.P.A. v. Zaransky, 83 Ohio App.3d 169, 176, 614 N.E.2d 807 (1992)).

   Thus, in the present case, should the Plaintiffs ultimately prove each of the

elements of their unjust enrichment claim,[9] they will be entitled to restitution of the

reasonable value of the benefits conferred upon the Defendant, which will be

limited, as noted above, to the actual value of the services rendered to the

Defendant (to include the value of materials and fair profit, if applicable) and to the

─────────────────

   [9]The elements of an unjust enrichment claim are as follows: "(1) a benefit
conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the
benefit; and (3) retention of the benefit by the defendant under circumstances
where it would be unjust to do so without payment (i.e., the 'unjust enrichment'
element)." Saber Healthcare Group, LLC v. Starkey, 2010 Ohio App. LEXIS 1479,
**5-6 (Ohio Ct. App., Huron County Apr. 23, 2010) (citing L & H Leasing Co. v.
Dutton, 82 Ohio App. 3d 528, 534, 612 N.E.2d 787 (Ohio 3rd App. Dist. 1992)).

21

amount the Defendant was enriched by the Plaintiffs' rendering of the services.

C.    Related Issues

1.    Consequential Damages

The Plaintiffs claim that they are also entitled to consequential damages for the complete destruction of their business, given that Auto Chem depended on Turtle Wax to sustain its business, since it had no other customers. Doc. #39 at 8-9 (citing Hadley v. Baxendale, 156 Eng. Rep. 145 (1854)).  While the Defendant concedes that Ohio courts have awarded consequential damages, in certain fraud cases, it correctly points out that "such consequential damages are severely limited by concepts such as proximate cause, foreseeability, mitigation, remoteness and speculation." Telxon Corp. v. Smart Media of Del., Inc., 2005 Ohio App. LEXIS 4475, **109-10, 2005 Ohio 4931 (Ohio 9th App. Dist. Sept. 21, 2005) (citing Dziedzicki v. Bonafine, 1992 Ohio App. LEXIS 6393, *6 (Ohio 9th App. Dist. Dec. 16, 1992); Guest v. Metker, 1990 Ohio App. LEXIS 1752, **16-19 (Ohio 5th App. Dist. Apr. 30, 1990)); see also Restatement (Second) of Torts § 549, cmt. d (noting that, to be recoverable, "consequential" damages resulting from a fraudulent misrepresentation "must be of a kind that might reasonably be expected to result from reliance upon the misrepresentation").  The Defendant further argues that the Plaintiffs have pointed to no case extending the law of consequential damages to include damages for the destruction of a business and, further, that it

22

would be unreasonable to extend the law in this fashion, thereby forcibly locking businesses into perpetual partnerships when one business depended on another business for its survival. Doc. #40 at 8-9. The Plaintiffs respond by simply asserting that "the measure of damages could *otherwise* be the difference between the value of the business before, and after, its injury or destruction (Doc. #42 at 4 (emphasis in original)) and citing, in support thereof, Taylor v. B. Heller & Co., 364 F.2d 608, 612 (6th Cir. 1966) and Wagenheim v. Alexander Grant & Co., 19 Ohio App. 3d 7, 17, 482 N.E.2d 955 (Ohio 10th App. Dist. 1983).

In the first case cited by the Plaintiffs, Taylor v. B. Heller & Co., the trial court found the defendant guilty of negligence in the sale of food products and "further found as a matter of fact that the destruction of the business of A. C. Taylor Packing Company was the direct result of the production of spoiled wieners." Taylor, 364 F.2d at 611. The Court then went on to apply the law of Ohio, which "recognizes the action for damages for destruction of a business as measured by the difference between the value of the business before and after the injury or destruction." Id. at 612 (citing Bishop v. East Ohio Gas Co., 1943 Ohio App. LEXIS 874 (Ohio 8th App. Dist. Jun. 28, 1943)).

In Wagenheim v. Alexander Grant & Co., the plaintiff was a business that provided payroll account management, while the defendant was an accounting firm that provided services to many of the same clients. Wagenheim, 19 Ohio App. 3d at 8-9. Upon learning from the payroll management business that it was suffering

23

cash flow problems, the accounting firm began advising their mutual clients not to send additional payroll funds to the management firm. Id. at 9-10.  At trial, the jury returned a verdict in favor of the plaintiff, awarding damages that included, in part, compensation for the demise of the plaintiff's business. Id. at 10, 16.  Upon review, the Appellate Court determined that, "[a]fter reviewing the record, we find that there is sufficient, credible and competent evidence to support the jury's finding that defendant's actions were the direct and proximate cause of the demise of CDS." Id. at 17.

The Court concludes that Ohio law recognizes the propriety of consequential damages when the same pass scrutiny for proximate cause, foreseeability, mitigation, remoteness and speculation, as noted above.  Further, to the extent a plaintiff presents sufficient evidence to demonstrate that a defendant's fraudulent conduct was the direct and proximate cause of the destruction of its business and that the same might reasonably have been expected to result from such conduct, damages for the destruction of the business are properly recoverable.


### 2.   Multiple Measures of Recovery

The Defendant argues that the Plaintiffs cannot recover multiple damages for the same claimed wrong. Doc. #40 at 9-10.  The Defendant's point is well-taken. The Sixth Circuit cites the Supreme Court in stating that, "[a] party is not entitled to recover twice for the same loss, even if the party would otherwise be able to

24

recover for that loss under separate theories of liability." <u>Johnson v. Howard</u>, 2001

U.S. App. LEXIS 26666, *4 (6th Cir. 2001) (citing <u>General Tel. Co. v. EEOC</u>, 446

U.S. 318, 333, 100 S. Ct. 1698, 1708, 64 L. Ed. 2d 319 (1980); <u>Braley v. City of</u>

<u>Pontiac</u>, 906 F.2d 220, 224 (6th Cir. 1990); 22 AM. JUR. 2D Damages § 35

(1988)).  Further, as to the award of punitive damages, the Ohio Supreme Court

instructs that "[r]ecoveries for multiple claims for punitive damages, contained

within separately pleaded tort theories, may not be combined, or stacked, when

such multiple tort claims arise from the same animus." <u>Digital & Analog Design</u>

<u>Corp. v. North Supply Co.</u>, 44 Ohio St. 3d 36, syl., 540 N.E.2d 1358 (1989).


III.    <u>Conclusion</u>

The Court ADOPTS the Magistrate Judge's Report and Recommendations

(Doc. #65), wherein she recommends OVERRULING the Defendant's Motion to

Dismiss Count IV of Plaintiffs' Second Amended Complaint (Doc. #55), and

OVERRULES the Defendant's objections thereto (Doc. #67).  Further, the Court

OVERRULES, in part, and SUSTAINS, in part, the Plaintiffs' Motion in Limine, as

more fully described herein.

Counsel of record will note that a telephone conference call will be held,

between Court and counsel, beginning at 4:15 p.m. (Eastern time), on Monday,

October 4, 2010, for the purpose of discussing a new trial date and other dates

leading to the resolution of this litigation.


September 24, 2010


_____
WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT


Copies to:
Counsel of record

26